[Cite as *State v. Springer*, 2017-Ohio-8861.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 104649**

---

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# CARLTON B. SPRINGER

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART
AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-599541-A

**BEFORE:** E.A. Gallagher, P.J., Kilbane, J., and Jones, J.

**RELEASED AND JOURNALIZED:** December 7, 2017

**ATTORNEYS FOR APPELLANT**

Mark A. Stanton
Chief Public Defender
BY: Jeffrey Gamso
        Noelle A. Powell
Assistant Public Defenders
301 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY: Amanda Hall
        Margaret Kane
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, P.J.:

{¶1}  Defendant-appellant Carlton Springer appeals his conviction for murder. We affirm in part, reverse in part and remand.

**Factual and Procedural Background**

{¶2} Springer was charged with murder, felony murder, felonious assault, two counts of involuntary manslaughter and domestic violence[1] in the death of Theresa Adair. The case proceeded to a jury trial where the following facts were adduced.

{¶3} On the evening of September 5 and the early morning hours of September 6, 2015, Theresa Adair was attending a party in the apartment of Bryce Wimbley in the Union Square Apartments in Cleveland, Ohio. Also present at the party with Adair were her friends Stephanie Wilcox, Lovie Clark and Leslie Hawkins. All four women had been consuming alcohol throughout the night. At some point in the evening Springer appeared at the door to the apartment and caused a disturbance by arguing with Adair. Hawkins and Clark testified that they knew Springer as Adair's boyfriend but that the two had broken up. Witness accounts of the interaction between Adair and Springer in the apartment differed. Hawkins testified that Springer said he had heard that Adair was having sex with someone else in the apartment building. Wilcox and Hawkins testified that Adair was physically pulled from the apartment by Springer. Clark and Wimbley testified that Springer did not touch Adair but that she followed him out of the apartment and into the hallway on her own accord.

---

[1]This charge was amended by the court to the lesser included offense of assault pursuant to a Crim.R. 29 motion for acquittal.

{¶4} An elevator surveillance camera captured Adair, followed closely by Springer, entering an elevator on the third floor of the Union Square Apartments at 1:16 a.m.[2] The elevator surveillance footage reflects an apparent argument between Adair and Springer that included finger pointing, gesturing and spitting. At one point, Springer exited the elevator and he appeared to spit on Adair from the hallway. Adair reacted by stopping the elevator door from closing and further engaging with Springer. Springer then re-entered the elevator and grabbed Adair's blouse near the neckline and violently pulled her out of the elevator, down the hallway and out of the camera's range.

{¶5} Wilcox testified that Adair and Springer were gone from the apartment for 20 to 25 minutes before Springer returned alone and said "I knocked your girl out. I knocked your girl out." Clark testified that Springer returned two minutes after leaving with Adair and asked her, "Why is your best friend standing outside the elevator knocked the f * * * out?" Hawkins testified that she, Clark and Wilcox remained in the apartment for five minutes after Adair and Springer left and found Adair laying on the floor near the elevator. Hawkins did not recall Springer returning to the apartment after he left with Adair.

{¶6} The women found Adair near the elevator. Wilcox testified that Adair was unconscious and had a lump on the right side of her forehead. Hawkins testified that Adair was laying on the floor and slumped against a wall near the elevator crying and screaming that Springer had "beat her up." Hawkins observed a "big gash" on Adair's

---

[2]Later testimony established that the times provided by the video surveillance were inaccurate in that they were slow by approximately 41 minutes.

forehead. Clark testified that Adair was stretched out in front of the elevator with one leg bent and the other extended. Clark saw a "hickie" on Adair's forehead. Clark further testified that Springer appeared and made a crude comment about Adair probably not wearing panties. This interaction was not reported by any other witness.

{¶7} The video surveillance camera from inside the elevator captured the women assisting Adair into the elevator from the same direction that the earlier footage had shown Springer pulling her. In the footage of Adair during her confrontation with Springer she appeared to be reasonably steady on her feet, while the latter footage reflected that Adair was unsteady and needed assistance in exiting the elevator. The surveillance video also showed Adair putting her hand over her forehead twice while in the elevator.

{¶8} The women escorted Adair back to Adair's apartment on the first floor of the Union Square Apartment building. Ice was applied to Adair's injuries and the women attempted to keep Adair awake but she eventually went to sleep in her bed with Clark sleeping next to her. The next morning Clark was awakened by a snoring sound. Clark and Hawkins found Adair laying on the floor bleeding from her mouth and nose. They called 911 and Adair was transported to MetroHealth Medical Center where she was declared brain dead after a hemicraniectomy was performed to remove pressure due to a subdural hematoma.

{¶9} Dr. Patrick Hansma testified that he performed the autopsy on Adair and ruled the cause of death to be blunt force trauma of the head with sudbural hematoma and brain injury. Hansma testified that Adair's injuries were caused by a "severe force"

impacting her brain that would not come from merely falling off a bed or tripping and falling. Hansma found Adair's injuries to be consistent with someone beating or striking her.

{¶10} The jury returned a verdict of not guilty on the murder charge but guilty on all remaining counts. The trial court merged the counts as allied offenses and the state elected to proceed to sentencing on the felony murder charge. The trial court imposed a prison sentence of 15 years to life on that count.

**Law and Analysis**

**I. Manifest Weight**

{¶11} In his first assignment of error, Springer argues that his convictions were against the manifest weight of the evidence.

{¶12} A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence.

{¶13} "When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a 'thirteenth juror' and may disagree with the factfinder's resolution of conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The

reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 215, 485 N.E.2d 717 (1st Dist.1983). In conducting such a review, this court remains mindful that the credibility of witnesses and the weight of the evidence are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraphs one and two of the syllabus. Reversal on manifest weight grounds is reserved for the "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *Martin*, supra.

{¶14} Springer argues that his convictions are against the manifest weight of the evidence because the relevant witnesses were intoxicated at the time of incident and their accounts varied on details such as whether or not (1) Adair's head injury was bleeding, (2) she was unconscious when she was discovered and (3) she was able to talk after the incident. Springer argues that because there is no video of him actually striking Adair, she may have tripped over her own feet and injured her head on the floor or a wall. We find no merit to Springer's argument. Despite the above inconsistencies, the witness accounts were uniform in describing Adair leaving the apartment with Springer after a dispute and subsequently finding Adair with a lump on her head outside the elevator. Most importantly, the surveillance video depicts Springer's sudden and violent removal of Adair from the elevator shortly before she was discovered by her friends. Dr. Hansma

testified that Adair's injuries were not caused by merely falling off a bed or tripping and falling. We cannot say that the jury lost its way in finding that Springer caused Adair's death by committing felonious assault.

{¶15} Furthermore, to the extent that Springer argues that the counts for which he was found guilty, but that merged with the felony murder count, were against the weight of the evidence, we need not address those claims because of the effect of merger. *State v. Worley*, 8th Dist. Cuyahoga No. 103105, 2016-Ohio-2722, ¶ 23. Our conclusion that Springer's aggravated murder conviction was not against the manifest weight of the evidence necessarily renders any issues with the merged offenses to be harmless error because his final sentence would not be affected by any review of the evidence underlying the merged counts.

{¶16} Springer's first assignment of error is overruled.

**II. Ineffective Assistance of Counsel**

{¶17} In his second assignment of error, Springer argues that he was denied effective assistance of counsel at trial. In order to establish a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) the performance of defense counsel was seriously flawed and deficient, and (2) the result of defendant's trial or legal proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶18} Springer first argues that his trial counsel erred by failing to object to testimony offered by the investigating detectives explaining why Wilcox, Clark and

Hawkins provided greater detail to investigators in subsequent interviews than they did in their initial written statements to police. Springer argues that his counsel should have objected to statements made by the detectives wherein they opined that in their experience, intoxicated witnesses and witnesses to a traumatic event sometimes remember events with greater detail and clarity after a lapse in time.

{¶19} Assuming arguendo that the detectives' testimony could be construed as exceeding the testimony of a lay witness, we find no prejudice in this instance. There is no dispute amongst the witnesses that Adair left the apartment with Springer, the surveillance video depicted an argument between the two that escalated to Springer physically removing Adair from the elevator against her will and that Adair was discovered with a significant head injury. The second relevant portion of the surveillance video depicted a noticeably deteriorated Adair being escorted to her apartment after she was discovered by her friends. Finally, the responding detective from the Cleveland Metropolitan Housing Authority observed Adair being removed from her apartment by EMS the following morning and noted a large knot on her forehead consistent with the details provided by the witnesses. We cannot say that the result of the proceedings would have been different had Springer's counsel objected to the memory-related testimony of the investigating detectives.

{¶20} Springer next argues that his attorney was ineffective because he failed to call a medical expert to address questions stemming from Adair's medical record. This issue was raised by Springer's trial counsel at sidebar where he asserted that there was exculpatory evidence within the first few pages of the medical records and that he had not

questioned the coroner to the extent that he would have had he known that the state was not going to call the treating physician. The state agreed to stipulate to the authenticity and admissibility of Adair's medical records and Springer's counsel stated that his concerns were satisfied by the trial court's agreement to give him leeway in referencing relevant portions of the medical records in his closing argument.

{¶21} Springer's attorney did address the medical records in his closing argument noting that the EMS report and the records from Adair's hospital admission did not report facial lacerations or bruising. The same medical records do, however, reflect that Adair suffered a "massive left subdural hematoma" that necessitated an emergency hemicraniectomy surgical procedure. These records are consistent with the coroner's testimony.

{¶22} We can find no prejudice in the record on these facts. Springer's attorney did call the jury's attention to the discrepancy between the medical records that failed to mention a visible head injury and the testimony of the witnesses who described a visible lump on Adair's forehead. Even if this discrepancy was resolved in favor of Springer, there is no dispute that Adair suffered a subdural hematoma as a result of blunt force trauma. Therefore, Springer's argument lacks merit.

{¶23} Springer next argues that his attorney was ineffective because he failed to object to statements made during the state's closing argument that Springer suggests qualify as prosecutorial misconduct.

{¶24} The test for prosecutorial misconduct is whether the prosecutor's remarks or questions were improper and, if so, whether they prejudicially affected substantial rights

of the accused. *State v. Hicks*, 194 Ohio App.3d 743, 2011-Ohio-3578, 957 N.E.2d 866, ¶ 30 (8th Dist.). A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. *State v. Apanovitch*, 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987). The focus of that inquiry is on the fairness of the trial, not on the culpability of the prosecutor. *State v. Bey*, 85 Ohio St.3d 487, 709 N.E.2d 484 (1999). "[G]iven the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." (Emphasis added.) *United States v. Hasting*, 461 U.S. 499, 508-509, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983).

{¶25} Our focus upon review is whether the prosecutor's comments violated appellant's substantial rights, thereby depriving appellant of a fair trial such that there is a reasonable probability that, but for the prosecutor's misconduct, the result of the proceeding would have been different. *Hicks* at ¶ 30; *State v. Onunwor*, 8th Dist. Cuyahoga No. 93937, 2010-Ohio-5587, ¶ 42, citing *State v. Loza*, 71 Ohio St.3d 61, 641 N.E.2d 1082 (1994).

{¶26} We note, however, that a defendant's substantial rights cannot be prejudiced when the remaining evidence, standing alone, is so overwhelming that it constitutes defendant's guilt and the outcome of the case would have been the same regardless of evidence admitted erroneously. *Hicks* at ¶ 30, citing *State v. Williams*, 38 Ohio St.3d 346, 528 N.E.2d 910 (1988).

**{¶27}** As a general rule, a prosecutor is entitled to a certain degree of latitude during closing argument. *State v. Brown*, 38 Ohio St.3d 305, 528 N.E.2d 523 (1988). Moreover, as stated by this court in *State v. Bruce*, 8th Dist. Cuyahoga No. 70982, 1997 Ohio App. LEXIS 4334 (Sept. 25, 1997), closing arguments must be viewed in their entirety to determine whether the disputed remarks were prejudicial. *Id.*

**{¶28}** Springer argues that the state attempted to improperly shift the burden of proof to the defendant by referencing the fact that Adair could not provide her account of the incident because she was deceased. Springer also faults his attorney for failing to object to a portion of the state's rebuttal argument wherein the state noted that the defense failed to question the coroner about the fact that the EMS and emergency room records omitted any reference to bruising or lacerations.

**{¶29}** We find no error in this instance. First, the state's comment that the jury could not hear the victim's account due to her death was permissible. *See State v. Moody*, 2d Dist. Montgomery No. 26926, 2016-Ohio-8366, ¶ 122. In regards to the reference to the lack of testimony elicited regarding the medical records, although the prosecution may not comment on the defendant's silence, "[t]he prosecution is not prevented from commenting upon the failure of the defense to offer evidence in support of its case." *State v. Heineman*, 8th Dist. Cuyahoga No. 103184, 2016-Ohio-3058, 65 N.E.3d 287, ¶ 39, quoting *State v. Williams*, 23 Ohio St.3d 16, 20, 490 N.E.2d 906 (1986).

**{¶30}** Finally, Springer argues that his counsel was ineffective for failing to timely object to the trial court's response to a jury question regarding the definition of felony murder.

**{¶31}** When a jury requests further instruction or clarification of instructions previously given, a trial court may exercise its discretion in determining the appropriate response. *State v. Carter*, 72 Ohio St.3d 545, 1995- Ohio-104, 651 N.E.2d 965. In answering the jury's question, the trial court instructed the jury to focus on the definition of the offense provided and repeated the definition of the offense omitting only an extraneous language. We find no error.

**{¶32}** Springer's second assignment of error is overruled.

### III. Prosecutorial Misconduct

**{¶33}** In Springer's third assignment of error he reiterates the arguments addressed above claiming that the state committed prosecutorial misconduct by referencing the fact that the victim was unable to provide her account of the event, asking the jury to "do justice for her" and raising the defense's failure to question a witness regarding the medical records. For the reasons addressed in Springer's second assignment of error, we find no merit to his arguments.

**{¶34}** Springer's third assignment of error is overruled.

### IV. Improper Response to the Jury Question

**{¶35}** In Springer's fourth assignment of error he again argues that the trial court's answer to the jury's question seeking further definition of felony murder constituted error. For the reasons addressed in Springer's second assignment of error we find no error in the trial court's response to the jury.

**{¶36}** Springer's fourth assignment of error is overruled.

### V. Verdict Forms

**{¶37}** In his fifth assignment of error Springer argues that the trial court violated the holding in *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735, by entering a conviction against him for felony murder in violation of R.C. 2903.02(B) when the verdict form for that count failed to indicate the degree of the offense or make reference to felonious assault, the underlying predicate offense. R.C. 2945.75(A) provides in relevant part:

> When the presence of one or more additional elements makes an offense one of more serious degree:
>
> * * *
> (2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

R.C. 2945.75(A)(2).

**{¶38}** In *Pelfrey*, the Ohio Supreme Court held:

> Pursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense.

*Id*. at syllabus.

**{¶39}** However, *Pelfrey* has been held to be inapplicable to felony murder under R.C. 2903.02(B) because it is an unclassified offense and does not set forth any additional elements that could make the offense "one of more serious degree." *State v. Bell*, 2d Dist. Montgomery No. 24783, 2012-Ohio-3491, ¶ 9; *State v. Taylor*, 2d Dist. Montgomery No. 26896, 2016-Ohio-5541, ¶ 20; *State v. Brown*, 5th Dist. Richland No. 09 CA 137, 2010-Ohio-2757, ¶ 18. Therefore, we find no merit in Springer' argument.

**{¶40}** Springer's fifth assignment of error is overruled.

**VI. Court Costs**

**{¶41}** Springer argues in his sixth assignment of error that the trial court committed plain error in imposing court costs after finding him indigent and that his attorney was ineffective for failing to move for the waiver of court costs.

**{¶42}** R.C. 2947.23(A)(1) governs the imposition of court costs and provides in relevant part: "In all criminal cases * * * the judge * * * shall include in the sentence the costs of prosecution * * * and render a judgment against the defendant for such costs." Unlike financial sanctions issued pursuant to R.C. 2929.18, "the imposition of court costs under R.C. 2947.23 does not require the trial court to first consider the defendant's ability to pay." *State v. Hodge*, 9th Dist. Lorain No. 14CA010648, 2015-Ohio-3724, ¶ 15. A defendant's financial status is therefore "irrelevant to the imposition of court costs." *State v. Clevenger*, 114 Ohio St.3d 258, 2007-Ohio-4006, 871 N.E.2d 589, ¶ 3 (superseded by statute on other grounds). Accordingly, a sentencing court must include the costs of prosecution in the sentence and render a judgment against the defendant for costs even if the defendant is indigent. *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 8.

**{¶43}** In its discretion, however, a trial court may waive payment of court costs upon a defendant's motion if the defendant is indigent. R.C. 2949.092; *State v. Walker*, 8th Dist. Cuyahoga No. 101213, 2014-Ohio-4841, ¶ 9. We review a trial court's denial of a motion to waive costs for abuse of discretion. *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, ¶ 23 (superseded by statute on other grounds).

**{¶44}** This court has refused to find plain error where the trial court has exercised its discretion to impose court costs despite a defendant's indigence. *State v. Hicks*, 8th Dist. Cuyahoga No. 105083, 2017-Ohio-8312, ¶ 19. Therefore, we find no merit to Springer's plain error argument.

**{¶45}** As to Springer's claim of ineffective assistance of counsel relating to the imposition of costs, he must show that a reasonable probability exists that the trial court would have waived payment of the costs if such motion had been filed. *State v. Graves*, 8th Dist. Cuyahoga No. 103984, 2016-Ohio-7303, ¶ 13, citing *State v. Vanderhorst*, 8th Dist. Cuyahoga No. 97242, 2012-Ohio-2762, ¶ 78; *State v. Bonton*, 8th Dist. Cuyahoga No. 102918, 2016-Ohio-700, ¶ 20. This court has held that "it is nearly impossible to establish prejudice as a result of counsel's failure to move for a waiver of costs at sentencing" because under R.C. 2947.23(C), as amended in 2013, trial courts now retain jurisdiction to waive, suspend or modify the payment of court costs at any time. *State v. Mihalis*, 8th Dist. Cuyahoga No. 104308, 2016-Ohio-8056, ¶ 33; *State v. Brown*, 8th Dist. Cuyahoga No. 103427, 2016-Ohio-1546, ¶ 15.

**{¶46}** However, in *State v. Gibson*, 8th Dist. Cuyahoga No. 104363, 2017-Ohio-102, this court carved out a narrow exception to the holdings in *Mihalis* and *Brown* under facts analogous to the present case. The panel in *Gibson* held that a prior finding by the trial court that a defendant was indigent demonstrated a reasonable probability that the trial court would have waived costs had counsel made a timely motion. *Id*. at ¶ 16. The court concluded that under such circumstances counsel's failure to move for waiver of costs was deficient and prejudiced the defendant. As in *Gibson*,

the trial court in this instance found Springer to be indigent and his trial counsel nonetheless failed to move for a waiver of costs. Therefore, the limited exception in *Gibson* controls, and we remand for a hearing regarding the imposition of costs.

{¶47} Springer's sixth assignment of error is sustained.

**VII. Cumulative Error**

{¶48} In his final assignment of error, Springer argues that the cumulative errors addressed in his second, third and fourth assignments of error deprived him of his right to due process.

> It is true that separately harmless errors may violate a defendant's right to a fair trial when the errors are considered together. In order to find "cumulative error" present, we first must find that multiple errors were committed at trial. We then must find a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors.

*State v. Clark*, 8th Dist. Cuyahoga No. 89371, 2008-Ohio-1404, ¶ 62, quoting *State v. Djuric*, 8th Dist. Cuyahoga No. 87745, 2007-Ohio-413.

{¶49} Having found no merit to the errors alleged in Springer's second, third and fourth assignments of error, we reject the application of the cumulative error doctrine in this instance.

{¶50} Springer's seventh assignment of error is overruled.

{¶51} The judgment of the trial court is affirmed in part, and reversed in part.

{¶52} We vacate the imposition of court costs and remand for a hearing regarding the imposition of costs.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
LARRY A. JONES, SR., J., CONCUR