[Cite as *State v. Ramsey*, 2018-Ohio-2365.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| ROBERT J. RAMSEY | : | Case No. 17-CA-76 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                 Pleas, Case No. 2017CR00231


JUDGMENT:                        Affirmed


DATE OF JUDGMENT:                June 18, 2018


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

DANIEL J. BENOIT                          JAMES A. ANZELMO
20 South Second Street                    446 Howland Drive
Fourth Floor                              Gahanna, OH  43230
Newark, OH  43055

*Wise, Earle, J.*

{¶ 1}  Defendant-Appellant, Robert J. Ramsey, appeals his September 11, 2017 conviction by the Court of Common Pleas of Licking County, Ohio.  Plaintiff-Appellee is the state of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶ 2}  On March 22, 2017, officers with the adult parole authority were investigating reports of the unlawful manufacturing of methamphetamine involving two of their parolees, Douglas Johnson and Douglas Baumgartner.  The officers went to a property owned by Mr. Johnson.  The property contained a structure occupied by Mr. Johnson, another structure occupied by Mr. Baumgartner, and a third structure which was a cabin.  The officers were accompanied by law enforcement due to the nature of the investigation.  Several police officers were present at the scene, including Licking County Sheriff Detectives Greg Collins and Alan Thomas.  Also present on the property at the time were appellant and his wife.  Mr. Johnson had offered appellant and his wife the opportunity to rent the cabin in the future in exchange for cleaning and fixing up the dwelling.  Supplies used to manufacture methamphetamine were found inside the cabin.  Several individuals were arrested, including appellant.

{¶ 3}  On March 30, 2017, the Licking County Grand Jury indicted appellant on one count of aggravated possession of drugs in violation of R.C. 2925.11, one count of illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041, one count of having a weapon while under disability in violation of R.C. 2923.13, and one count of illegal manufacture of drugs in violation of R.C. 2925.04.

{¶ 4}  Prior to trial, appellant requested a polygraph examination and stipulated to its admissibility.

{¶ 5}  A bench trial was scheduled for July 26, 2017.  On the morning of trial, appellant pled guilty to the possession and disability counts.  The remaining charges proceeded to trial.  The trial court found appellant guilty as charged.

{¶ 6}  Prior to sentencing, appellant filed a motion to dismiss his counsel, claiming his counsel was ineffective.  The trial court denied the motion.  By judgment entry filed September 11, 2017, the trial court sentenced appellant to an aggregate term of five years in prison.

{¶ 7}  Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶ 8}  "THE TRIAL COURT'S DECISION TO FIND RAMSEY GUILTY ON THE OFFENSES OF ILLEGAL ASSEMBLY OR POSSESSION OF CHEMICALS FOR THE MANUFACTURE OF DRUGS AND ILLEGAL MANUFACTURE OF DRUGS IS BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION."

II

{¶ 9}  "THE TRIAL COURT'S DECISION TO FIND RAMSEY GUILTY ON THE OFFENSES OF ILLEGAL ASSEMBLY OR POSSESSION OF CHEMICALS FOR THE MANUFACTURE OF DRUGS AND ILLEGAL MANUFACTURE OF DRUGS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS

CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION."

III

{¶ 10} "RAMSEY RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."

IV

{¶ 11} "THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING RAMSEY'S MOTION TO DISMISS HIS TRIAL COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."

I, II

{¶ 12} In his first two assignments of error, appellant claims his convictions for the illegal assembly or possession of chemicals for the manufacture of drugs and the illegal manufacture of drugs were against the sufficiency and manifest weight of the evidence. We disagree.

{¶ 13} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable

doubt." *Id.* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 14} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 15} We note circumstantial evidence is that which can be "inferred from reasonably and justifiably connected facts." *State v. Fairbanks,* 32 Ohio St.2d 34, 289 N.E.2d 352 (1972), paragraph five of the syllabus. "[C]ircumstantial evidence may be more certain, satisfying and persuasive than direct evidence." *State v. Richey,* 64 Ohio St.3d 353, 1992-Ohio-44, 595 N.E.2d 915. It is to be given the same weight and deference as direct evidence. *Jenks, supra*.

{¶ 16} Appellant was convicted of the illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041 which states:

(A) No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code.

(B) In a prosecution under this section, it is not necessary to allege or prove that the offender assembled or possessed all chemicals necessary to manufacture a controlled substance in schedule I or II. The assembly or possession of a single chemical that may be used in the manufacture of a controlled substance in schedule I or II, with the intent to manufacture a controlled substance in either schedule, is sufficient to violate this section.

{¶ 17} Appellant was also convicted of the illegal manufacture of drugs in violation of R.C. 2925.04 which states: "No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance."

{¶ 18} Both Detectives Collins and Thomas testified at trial. They testified to discovering many items outside and inside the cabin associated with the manufacture of methamphetamine. T. at 38-60, 72, 99-100, 102-103; State's Exhibits 3 and 7. A "gas generator" used to make methamphetamine "was still off-gassing, which means it was still having - - the two components were still chemically reacting." T. at 72. There is a "strong chemical odor" associated with off-gassing. *Id.* Appellant was present on the property. T. at 36-37. Discovered in his vehicle was an open container of salt. T. at 59; State's Exhibit 21. Salt is used in the production of methamphetamine. T. at 48-49, 59-60. Appellant was read his rights and was willing to speak with the detectives. T. at 60. At first appellant denied that the items discovered in the cabin belonged to him and he was cooking methamphetamine. T. at 61, 75, 104. He then admitted to owning the items and admitted "that he had in fact cooked down there a couple of times." T. at 61, 71-72,

76, 107. Appellant admitted to being familiar with the manufacture of methamphetamine, and stated he was cooking for personal use, not for profit. T. at 66, 204. Indeed, appellant was familiar with the manufacture of methamphetamine because he had a prior conviction for the illegal manufacture of methamphetamine in 2011. T. at 178. Appellant admitted to purchasing pseudoephedrine four times from February to March 2017, a necessary ingredient to manufacture methamphetamine. T. at 40, 63-64, 106, 199-200, 208-209; State's Exhibit 1.

{¶ 19} Cindy Erwin conducted the polygraph that appellant had requested. She asked appellant three relevant questions: 1) "At the property on Pleasant Valley Road did you ever cook meth?" 2) "At the property on Pleasant Valley Road did you ever assemble those items that were used to cook meth - that are used, rather, to cook meth?" 3) "At the property on Pleasant Valley Road did you ever help anyone cook meth?" T. at 136. Appellant answered in the negative. T. at 139-140. Ms. Erwin found appellant's answers "showed significant indicators of deception." T. at 138; State's Exhibit 5.

{¶ 20} Appellant took the stand in his own defense. He testified about two to three weeks before he was arrested, he spoke to Mr. Johnson about cleaning and fixing up the cabin in exchange for the opportunity to rent it. T. at 182-183. The previous occupants (appellant's cousin) had destroyed the property, and he believed they still had a key to the cabin. T. at 180, 183, 191-192. Appellant stated his cousin's girlfriend's father knew how to make methamphetamine and he was frequently at the property. T. at 210-211. Appellant went to the cabin four to five times before his arrest, dropping off materials, and cleaning "up a lot of things." T. at 185. On the day of his arrest, appellant was at the cabin working when he ran out of gas for his chainsaw. T. at 190. He decided to go

purchase more gasoline. T. at 192. He drove up the hill and "it looked like a SWAT team up there." *Id.* Appellant stopped and spoke with law enforcement officers. He stated he told Detective Collins four times he did not cook methamphetamine on the property. T. at 194-195, 219. He denied telling Detective Collins the items used to cook methamphetamine belonged to him. T. at 195, 219, 224. Appellant denied that most of the items seized belonged to him. T. at 196-199. He admitted to making the pseudoephedrine purchases to trade for methamphetamine with Mr. Baumgartner. T. at 200, 205. On cross-examination, appellant agreed it was fair to say that the pseudoephedrine he purchased and gave to Mr. Baumgartner was likely used to cook methamphetamine. T. at 207. He explained the salt was in his vehicle because he went to the food pantry and "we lived kind of in our truck." T. at 201. Appellant denied ever cooking methamphetamine on the property or helping anyone to cook. T. at 203, 217. He denied possessing any items for the purpose of manufacturing methamphetamine. T. at 203. He believed the whole thing was a big misunderstanding. T. at 220.

{¶ 21} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶ 22} Given the evidence presented, we find sufficient evidence to support the guilty findings for the illegal assembly or possession of chemicals for the manufacture of drugs and the illegal manufacture of drugs. We do not find that the trial court lost its way or any manifest miscarriage of justice.

{¶ 23} Assignments of Error I and II are denied.

III

{¶ 24} In his third assignment of error, appellant claims he was denied the effective assistance of counsel.  We disagree.

{¶ 25} Specifically, appellant argues his trial counsel failed to file a motion to suppress the evidence found in the cabin and his statements made to police, entered into an invalid stipulation on the admissibility of the polygraph test and failed to object to the admission of the results into evidence, and failed to request a waiver of court costs.

{¶ 26} The standard this issue must be measured against is set out in *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.  Appellant must establish the following:

2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.  (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)

3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

{¶ 27} This court must accord deference to defense counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight." *State v. Post,* 32 Ohio St.3d 380, 388, 513 N.E.2d 754 (1987).

MOTION TO SUPPRESS

{¶ 28} As stated by this court in *State v. Altman,* 5th Dist. Licking No. 06 CA 117, 2007-Ohio-6761, ¶ 20:

[F]ailure to file a motion to suppress is not per se ineffective assistance of counsel. *State v. Madrigal,* 87 Ohio St.3d 378, 389, 2000-Ohio-448, 721 N.E.2d 52, certiorari denied (2000), 531 U.S. 838, 121 S.Ct. 99, 148 L.Ed.2d 58. See also, *Kimmelman v. Morrison* (1986), 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305. Even when some evidence in the record supports a motion to suppress, counsel is presumed to be effective if the counsel could have reasonably concluded that the filing of a motion to suppress would have been a futile act. *State v. Chandler,* Cuyahoga App. No. 81817, 2003-Ohio-6037; *State v. Edwards* (July 11, 1996), Cuyahoga App. No. 69077, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 485 N.E.2d 717. See also, *Strickland,* 466 U.S. at 689. In such a case, where probability of success is slim, appellant fails to establish prejudice. *State v. Nields,* 93 Ohio St.3d 6, 2001-Ohio-1291, 725 N.E.2d 859. Essentially, counsel's failure to file a motion to suppress only constitutes ineffective assistance if, based on the record, the motion would

have been granted.  *State v. Robinson* (1996), 108 Ohio App.3d 428, 433, 670 N.E.2d 1077.

{¶ 29} Appellant argues the search of the cabin without a warrant was unreasonable.  Although he acknowledges the exception that parole officers, with the help of law enforcement, can conduct warrantless searches if there is a reasonable suspicion that the parolee is engaged in criminal activity, appellant argues the exception does not extend to areas the parolee rents out to third parties.  Appellant argues in this case, the parole search exception does not apply because Mr. Johnson had rented out the cabin to him.

{¶ 30} Adult Parole Officer Joseph Buck testified the subject property, including the cabin, was owned by Mr. Johnson, one of the parolees he was investigating.  T. at 23-25.  Appellant testified he spoke with Mr. Johnson and "me and my wife was asked to clean up the property, buy the materials, supply the materials needed to fix the property back up, and then after that then we would discuss renting the property out."  T. at 183. Appellant and his wife had thirty to ninety days to fix up the cabin and then Mr. Johnson would talk about leasing the cabin to them.  T. at 183-184.  Appellant testified the previous occupants still had a key to the cabin.  T. at 192.  Appellant stated, "[m]e and my wife was never living in that property."  T. at 216.  Appellant's own testimony establishes Mr. Johnson had not rented the cabin to him.

{¶ 31} We note appellant's defense was to distance himself from the cabin; that he merely was cleaning it up and the prior occupants still had access to the cabin.  He does

not now get to benefit from an argument that he was in fact a tenant of the cabin and protected from the parole search exception.

{¶ 32} Filing a motion to suppress arguing an illegal search would have been a futile act. Appellant's statements made to police were not the result of an illegal search. Appellant received *Miranda* warnings prior to making his statements. T. at 60.

{¶ 33} Upon review, we do not find any ineffective assistance of counsel on this issue.

POLYGRAPH TEST

{¶ 34} Appellant argues his trial counsel erred in stipulating to the polygraph examination results without also stipulating to the admissibility of the accompanying charts and graphs, and erred in not objecting to the admissibility of the results without the charts and graphs.

{¶ 35} In *State v. Souel,* 53 Ohio St.2d 123, syllabus, the Supreme Court of Ohio held the following in pertinent part:

The results of a polygraphic examination are admissible in evidence in a criminal trial for purposes of corroboration or impeachment provided that the following conditions are observed:

The prosecuting attorney, defendant and his counsel must sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either defendant or the state.

{¶ 36} In *State v. Williams,* 5th Dist. Licking No. 95 CA 69, 1997 WL 115882, *2 (Jan. 14, 1997), this court stated: "It seems clear that under Section 1 of the *Souel* standard that the stipulation requires admission at trial of both the graphs and the examiner's opinion. Therein, the Supreme Court specifically used the conjunctive 'and' as opposed to the disjunctive 'or.' "

{¶ 37} On June 19, 2017, appellant, his trial counsel, and the prosecutor entered into a stipulation wherein appellant agreed to submit to a polygraph test and agreed the "tests and results will be admitted at trial without objection." The stipulation is silent as to the admission of charts and graphs.

{¶ 38} The polygraph examiner, Cindy Erwin, testified during the trial to the court. She testified to the procedures involved in administering the test, the questions posed to appellant, both comparison questions and the relevant questions as cited above, and to her report which concluded: "Specific reactions indicative of deception appeared on the subject's charts as a result of relevant questions asked during the examination. It is to be considered, therefore, that this person did not tell the truth during the tests." State's Exhibit 5. The charts and graphs are not attached to the report.

{¶ 39} During cross-examination, Ms. Erwin acknowledged she had the charts with her. T. at 143. Defense counsel questioned her on what the charts indicated relative to her conclusion of deception. T. at 139-145. Ms. Erwin testified appellant's responses to all three questions were consistent, with no difference in the levels between one question to another. T. at 145.

{¶ 40} Following cross-examination, the trial court asked Ms. Erwin's questions about the polygraph test. The trial court specifically asked about the charts and graphs

and in fact placed the charts and graphs on the overhead and screen. T. at 153. Ms. Erwin then explained what the charts and graphs indicated, pointing out appellant's responses to the comparison questions relative to the relevant questions. T. at 153-154. Ms. Erwin discussed appellant's thoracic breathing, abdominal breathing, galvanic skin response, and cardio. T. at 154-155. On recross-examination, defense counsel asked Ms. Erwin additional questions about the charts and graphs, painstakingly going over all of the information contained therein. T. at 158-167.

{¶ 41} In *Williams,* the defendant specifically requested the admission of the polygraph's charts and graphs for the jury's review. The trial court denied the request. Based upon the holding in *Souel,* the *Williams* court determined that decision to be in error. In the case sub judice, defense counsel was free to request the admission of the charts and graphs, but chose not to do so. Defense counsel cannot then turn around and object to the admissibility of the results because the charts and graphs were not included. This case was tried to the bench. The trial court and defense counsel extensively questioned Ms. Erwin on the charts and graphs. Appellant has not shown any prejudice.

{¶ 42} We do not find the stipulation to be invalid because it did not include a stipulation to the admissibility of the charts and graphs. Defense counsel could have moved to have the charts and graphs admitted during the trial and presumably, pursuant to *Souel,* the request would have been granted. Whether a defendant moves to have the charts and graphs admitted can be a matter of trial strategy. We do not find that *Souel* or *Williams* require the admission of the charts and graphs absent a request.

{¶ 43} Upon review, we do not find any ineffective assistance of counsel on this issue.

COURT COSTS

{¶ 44}   Appellant argues his trial counsel erred in failing to request a waiver of court costs.

{¶ 45} In *State v. Davis,* 5th Dist. Licking No. 17-CA-55 (Dec. 20, 2017), ¶ 27, this court reviewed this exact issue and determined the following:

> We find no merit in Appellant's allegation that he received ineffective assistance of counsel as a result of his attorney failing to request that the trial court waive court costs.  Because R.C. 2947.23(C) grants appellant the ability to seek waiver of costs at any time, including after sentencing, Appellant has not been prejudiced by the failure of his counsel to request a waiver at sentencing.

{¶ 46} We note this court's decision in *Davis* has been accepted for review by the Supreme Court of Ohio upon certification of a conflict with the decision in *State v. Springer,* 8th Dist. Cuyahoga No. 104649, 2017-Ohio-8861.   Unless a decision is rendered on the issue to the contrary in the future, this court will continue to abide by its decision in *Davis.*

{¶ 47} Upon review, we do not find any ineffective assistance of counsel on this issue.

{¶ 48} Assignment of Error III is denied.

IV

{¶ 49} In his fourth assignment of error, appellant claims the trial court erred in denying his motion to dismiss his trial counsel prior to sentencing.  We disagree.

{¶ 50} Appellant's trial counsel was court-appointed.  "To discharge a court-appointed attorney, the defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Coleman,* 37 Ohio St.3d 286, 525 N.E.2d 792 (1988), paragraph four of the syllabus.  " 'An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate "good cause" to warrant substitution of counsel.' " *State v. Cowans,* 87 Ohio St.3d 68, 72, 717 N.E.2d 298, quoting *United States v. Iles* (C.A.6, 1990), 906 F.2d 1122, 1130.

{¶ 51} The trial court's decision is reviewed under an abuse of discretion standard. *Id.*  In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 52} Following his trial but prior to sentencing, appellant filed a pro se motion to dismiss his court-appointed counsel because of 1) "conflict of interests"; 2) "not filing motions, not calling witnesses, etc."; and 3) "misleading me."  At the start of the sentencing hearing, the trial court entertained appellant's motion and then denied the motion.  September 8, 2017 T. at 5-9.

{¶ 53} In his appellate brief at 15-16, appellant sets forth several instances of a breakdown in the relationship between himself and his trial counsel.  We have reviewed the argued instances and find them to be without merit.

{¶ 54} Upon review, we do not find the trial court abused its discretion in denying appellant's motion to dismiss his court-appointed counsel prior to sentencing.

{¶ 55} Assignment of Error IV is denied.

{¶ 56} The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.

By Wise, Earle, J.

Gwin, J. and

Delaney, J. concur.

EEW/db 64