[Cite as *State v. Bowen*, 2018-Ohio-4220.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. CT2017-0103 |
| | : | |
| CHRISTOPHER A. BOWEN | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Muskingum County
                            Court of Common Pleas, Case No.
                            CR2017-0118

JUDGMENT:                   AFFIRMED IN PART;
                            REMANDED IN PART FOR
                            RESENTENCING

DATE OF JUDGMENT ENTRY:     October 15, 2018

APPEARANCES:

For Plaintiff-Appellee:              For Defendant-Appellant:

D. MICHAEL HADDOX                    JAMES A. ANZELMO
MUSKINGUM COUNTY PROSECUTOR          446 Howland Drive
                                     Gahanna, OH 43230
GERALD V. ANDERSON II
27 North Fifth Street, P.O. Box 189
Zanesville, OH 43702-0189

*Delaney, J.*

{¶1}  Defendant-Appellant Christopher A. Bowen appeals the November 30, 2017 sentencing entry of the Muskingum County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2}  Detective Matt Wilhite, with the Muskingum County Sheriff's Office and assigned to the Central Ohio Drug Enforcement Task Force, was part of a drug investigation into Michael Brandon, Ronald Brandon, and April Jones. Based on the investigation, the task force obtained four search warrants for residences linked to those individuals. Ronald Brandon's residence was located at 1040-A Lindsay Avenue, within 1000 feet of an elementary school.

{¶3}  On the morning on May 26, 2016, the task force was going to execute the search warrants simultaneously. Det. Wilhite observed a green Chevy Avalanche truck parked on the street in front of 1040-A Lindsay Avenue. As part of his investigation, Det. Wilhite had previously observed the truck and knew it was owned and driven by Defendant-Appellant Christopher A. Bowen. Det. Wilhite saw Ronald Brandon and Bowen together on numerous occasions during the investigation.

{¶4}  Det. Wilhite instructed Detective Tanner Vogelmeier to deploy his K-9, Salsa, to conduct a free air sniff of the Chevy Avalanche. The K-9 conducted the sniff of the truck and alerted to the presence of narcotics. The vehicle was towed and impounded at the Muskingum County Sheriff's Office.

{¶5}  The task force obtained a search warrant to search the inside of the truck. The detectives first found a shoe box that contained a one-gallon Ziplock bag containing

marijuana. Next, a bag from a clothing store named "Jimmy Jazz" was located on top of the shoe box. Inside the clothing bag was a backpack, a leather case, a Crown Royal liquor bag, and a receipt for Jimmy Jazz clothing dated May 14, 2016. Inside the backpack was a one-gallon Ziplock bag containing marijuana, mason jars containing marijuana, a package of marijuana gummies, and paperwork from the Ohio Bureau of Motor Vehicles in Bowen's name. The leather case held digital scales and a small bag containing 1.29 grams of methamphetamine. The Crown Royal purple liquor bag contained three large bags of methamphetamine (167.25 grams total). The detectives also found a baggie of jeweler's bag and a baggie of rubber bands located near the shoe box and clothing bag. Finally, the detectives found Bowen's payroll checks, work clothing, and a hard hat. The hard hat was labeled in the name of Bowen. The items found in the vehicle were photographed.

{¶6} The drugs found in Bowen's vehicle were submitted to BCI for testing and were confirmed to be marijuana and methamphetamine. BCI also located Bowen's fingerprints on the small bag of methamphetamine.

{¶7} The detectives reviewed surveillance video from the Jimmy Jazz clothing store on May 14, 2016. Bowen is seen purchasing items from the Jimmy Jazz store and leaving with a Jimmy Jazz clothing bag identical to the one found in the Chevy Avalanche.

{¶8} Bowen was indicted by the Muskingum County Grand Jury on March 22, 2017. He was indicted on four counts: 1) Possession of drugs (methamphetamine) with a forfeiture specification, a first-degree felony in violation of R.C. 2925.11(A) and 2941.1417; 2) Trafficking in drugs (marijuana) with a juvenile/school specification and forfeiture specification, a third-degree felony in violation of R.C. 2925.03(A)(2) and

2941.1417; 3) Possession of drugs (marijuana) with a forfeiture specification, a fifth-degree felony in violation of R.C. 2925.11(A) and 2941.1417; and 4) Possession of drugs (Delta 9 – Tetrahydrocannabinol), a fifth-degree felony in violation of R.C. 2925.11(A).

{¶9} Bowen filed a motion to suppress evidence obtained from the Chevy Avalanche. He argued the evidence was obtained based on an unlawful seizure of the vehicle without a warrant. The trial court held a hearing and denied the motion via judgment entry on August 21, 2017.

{¶10} The matter came on for jury trial on October 24, 2017. Bowen objected to the State's peremptory challenge of Juror No. 4 under *Batson*. The trial court found the State established a non-discriminatory basis for the challenge. At the close of the defense's case, Bowen moved to allow the jury to consider whether Bowen was guilty of possession of methamphetamine in an amount less than 50 times the bulk amount because the evidence showed Bowen's fingerprint was found on one bag of methamphetamine containing less than the bulk amount. The trial court denied the motion.

{¶11} The jury found Bowen guilty of all charges and specifications. The trial court held a sentencing hearing on November 27, 2017 and issued its sentencing entry on November 30, 2017. The trial court sentenced Bowen to a concurrent prison term of ten years on Count One, 30 months on Count Two, 12 months on Count Three, and 12 months on Count Four. Bowen was ordered to pay a $15,000 fine and court costs. The trial court further ordered Bowen's 2002 Chevy Avalanche seized and forfeited to the Muskingum County Sheriff's Office.

{¶12} It is from the November 30, 2017 sentencing entry Bowen now appeals.

## ASSIGNMENTS OF ERROR

{¶13} Bowen raises six Assignments of Error:

{¶14} "I. THE TRIAL COURT ERRED BY DENYING BOWEN'S MOTION TO SUPPRESS EVIDENCE THAT POLICE OBTAINED IN VIOLATION OF HIS RIGHT AGAINST UNREASONABLE SEARCHES AND SEIZURES GUARANTEED BY THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION.

{¶15} "II. THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION REQUIRED THE TRIAL COURT TO INSTRUCT THE JURY ON A LESSER INCLUDED OFFENSE OF FIRST-DEGREE FELONY POSSESSION OF METHAMPHETAMINE.

{¶16} "III. THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTION TO REMOVE THE ONLY NON-CAUCASIAN ON THE JURY PANEL IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶17} "IV. BOWEN'S CONVICTIONS ARE BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶18} "V. BOWEN'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH

AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE 1 OF THE OHIO CONSTITUTION.

{¶19} "VI. BOWEN RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."

## ANALYSIS

### I. Motion to Suppress

{¶20} Bowen argues in his first Assignment of Error that the trial court erred when it denied his motion to suppress. He states law enforcement had no constitutional basis to seize the Chevy Avalanche without a warrant. We disagree.

{¶21} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶22} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *See State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See Williams, supra*. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶23} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991).

{¶24} On May 26, 2016, Det. Wilhite observed a Chevy Avalanche parked on Lindsay Street, in front of the residence of Ronald Brandon. Because of his investigation into Ronald Brandon, Det. Wilhite knew Bowen was an associate of Ronald Brandon. Det. Wilhite observed Bowen driving the Chevy Avalanche during the investigation. On May 26, 2016, while the search warrants were being executed as to the residences, Det.

Wilhite requested Salsa, a trained narcotics dog, conduct a free air sniff of the Chevy Avalanche parked on Lindsay Street. The use of a trained narcotics dog to sniff an automobile does not constitute a "search" under the Fourth Amendment. *State v. Cook*, 5th Dist. Muskingum Nos. 2010-CA-40, 2010-CA-41, 2011-Ohio-1776, ¶ 56 citing *Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). Salsa alerted to the odor of drugs from the Chevy Avalanche. Based on Salsa's alert to the odor of drugs from the Chevy Avalanche and that the truck was parked on a public roadway, Det. Wilhite had the truck towed to the Muskingum County Sheriff's Office. Det. Wilhite obtained a search warrant to search the interior of the truck.

{¶25} The trial court found the automobile exception to the search warrant requirement applied to the facts of the case. One of the exceptions to the warrant requirement is the automobile exception, which "allows police to conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband and exigent circumstances necessitate a search or seizure." *State v. Perdue*, 2nd Dist. Montgomery No. 27499, 2017-Ohio-876, ¶ 23 quoting *State v. Mills*, 62 Ohio St.3d 357, 367, 582 N.E.2d 972 (1992), citing *Chambers v. Maroney*, 399 U.S. 42, 48, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). (Other citation omitted.) The mobility of automobiles often creates exigent circumstance and is the traditional justification for this exception to the Fourth Amendment's warrant requirement. *California v. Carney*, 471 U.S. 386, 391, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). "If a car is readily mobile and probable cause exists to believe that it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996). A warrantless search is justified where there is imminent

danger that evidence will be lost or destroyed if a search is not immediately conducted. *State v. Moore*, 90 Ohio St.3d 47, 734 N.E.2d 804 (2000), citing *Ker v. California*, 374 U.S. 23, 41-42, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) (exigent circumstances justified the warrantless search of an apartment for drugs when officers feared destruction of evidence). "Because marijuana and other narcotics are easily and quickly hidden or destroyed, a warrantless search may be justified to preserve evidence." *Moore* at 52; see *United States v. Gaitan-Acevedo*, 148 F.3d 577 (6th Cir.1998).

{¶26} Bowen argues the State cannot rely upon the mobility of the Chevy Avalanche to support its argument for the application of the automobile exception because at the time of the seizure, the truck was parked on a public roadway. It has been held that "[t]he absence of a traffic stop does not prevent application of the automobile exception, as it does not detract from the automobile's inherent mobility or affect the officer's belief that the vehicle contains contraband." *State v. Acoff*, 1st Dist. No. C-160867, 2017-Ohio-8182, 100 N.E.3d 87, ¶ 24 citing *State v. Bazrawi*, 10th Dist. Franklin No. 12AP-1043, 2013-Ohio-3015, 2013 WL 3497638, ¶ 27. *See State v. Friedman*, 194 Ohio App.3d 677, 2011-Ohio-2989, 957 N.E.2d 815, ¶ 11 (9th Dist.) (the warrantless search of a parked vehicle alerted on by a police drug dog was permissible under the automobile exception because "no meaningful distinction" exists between a search conducted pursuant to a traffic stop and the search of a locked car parked in a public area).

{¶27} In this case, Det. Wilhite requested a canine free air sniff of the Chevy Avalanche because it was parked in front of the residence of Ronald Brandon, the subject of a criminal investigation. Det. Wilhite knew Bowen drove the truck and was an associate

of Ronald Brandon. The canine free air sniff of the parked Chevy Avalanche alerted Det. Wilhite to the presence of drugs. If a trained narcotics dog alerts to the odor of drugs from a lawfully stopped and detained vehicle, an officer has probable cause to search the vehicle for contraband. *State v. McCray*, 2nd Dist. Montgomery No. 26519, 2015-Ohio-3049, ¶ 17 citing *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 17. Based on the alert from the trained narcotics dog, Det. Wilhite had probable cause to seize the truck based on the automobile exception. After the truck was seized, the task force obtained a search warrant to search the interior of the truck.

{¶28} We do not find the trial court erred in denying the motion to suppress. Bowen's first Assignment of Error is overruled.

**II. Lesser Included Offense**

{¶29} Bowen contends in the second Assignment of Error that the trial court erred when it denied his request to instruct the jury on a lesser included offense for possession of methamphetamine.

{¶30} "[A]fter arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen,* 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. Bowen was charged with Possession of Methamphetamine (in an amount exceeding 50 times the bulk amount but less than 100 times the bulk amount), a first-degree felony in violation of R.C. 2925.11(A). Before jury deliberations, Bowen moved to allow the jury to consider whether Bowen was guilty of possession of methamphetamine in an amount less than 50 times the bulk amount. In his appeal, Bowen argues the trial court should have allowed the instruction

on the lesser included offense because Bowen's fingerprint was only found on the small bag of methamphetamine found in the Jimmy Jazz clothing bag in the Chevy Avalanche.

{¶31} "Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Moore*, 5th Dist. Coshocton No. 14CA0028, 2016-Ohio-828, ¶ 91 quoting *State v. Conway,* 108 Ohio St.3d 214, 2006–Ohio–791, 842 N.E.2d 996, ¶ 133, citing *State v. Thomas,* 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. In making this determination, the court must view the evidence in a light most favorable to defendant. *Id.,* 2006–Ohio–791 at ¶ 34, citing *State v. Smith,* 89 Ohio St.3d 323, 331, 731 N.E.2d 645 (2000) and *State v. Wilkins,* 64 Ohio St.2d 382, 388, 18 O.O.3d 528, 415 N.E.2d 303 (1980). Nevertheless, an instruction is not warranted every time any evidence is presented on a lesser included offense. There must be "sufficient evidence" to "allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense." (Emphasis sic.) *Id.,* citing *State v. Shane,* 63 Ohio St.3d at 632–633, 590 N.E.2d 272.

{¶32} The facts of each case determine the necessity of instructing the jury on lesser crimes or lesser included offenses. *State v. Kidder*, 32 Ohio St.3d 279, 282, 513 N.E.2d 311 (1987); *State v. Loudermill*, 2 Ohio St.2d 79, 80, 206 N.E.2d 198 (1965). The degree of the offense of possession of drugs, however, is determined by the amount of drugs involved. *See* R.C. 2925.11(C). "When the severity of the offense is determined by the amount of controlled substance involved, the amount becomes an essential element

of the offense. In order to obtain a conviction, the prosecution must prove that element, and the jury must so find, beyond a reasonable doubt." *State v. Cargile*, 8th Dist. Cuyahoga No. 89964, 2009-Ohio-6630, 2009 WL 4857298, ¶ 13 citing *State v. Chamblin,* 4th Dist. No. 02CA753, 2004-Ohio-2252, ¶ 13, citing *State v. Smith* (1983), 14 Ohio App.3d 366, 371, 471 N.E.2d 795.

{¶33} In this case, Bowen was charged with possession of methamphetamine in an amount exceeding 50 times the bulk amount but less than 100 times the bulk amount. The charge was based on four bags of methamphetamine found inside the Chevy Avalanche, which in total weight exceeded 50 times the bulk amount but less than 100 times the bulk amount. The task force's search of the interior of the truck resulted in the discovery of a Jimmy Jazz clothing bag. Inside the Jimmy Jazz clothing bag was a small bag of methamphetamine and a Crown Royal liquor bag containing three large bags of methamphetamine. Evidence was presented in the form of a receipt found in the clothing bag and security video that Bowen purchased items from the Jimmy Jazz clothing store. Det. Wilhite testified he observed Bowen driving the Chevy Avalanche during his investigation. The jury could have concluded the evidence showed Bowen possessed a bulk amount exceeding 50 times the bulk mount by less than 100 times the bulk amount.

{¶34} The evidence presented at trial did not warrant an instruction on a lesser included offense. Bowen's second Assignment of Error is overruled.

### III. *Batson* Challenge

{¶35} Bowen argues in his third Assignment of Error that the trial court erred in permitting the State to exercise a peremptory challenge against a non-Caucasian juror pursuant to the Supreme Court's ruling in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct.

1712, 90 L.Ed.2d 69 (1986). Bowen is African-American and argues Juror No. 4 was the only non-Caucasian juror on the panel.

{¶36} Whenever a party opposes a peremptory challenge by claiming racial discrimination "[a] judge should make clear, on the record, that he or she understands and has applied the precise *Batson* test when racial discrimination has been alleged in opposition to a peremptory challenge." *Hicks v. Westinghouse Materials Co*., 78 Ohio St.3d 95, 99, 1997–Ohio–227, 676 N.E.2d 872.

{¶37} In *Hicks*, the Ohio Supreme Court set forth the *Batson* test as follows:

First, a party opposing a peremptory challenge must demonstrate a prima-facie case of racial discrimination in the use of the strike .[ ]. To establish a prima-facie case, a litigant must show he or she is a member of a cognizable racial group and that the peremptory challenge will remove a member of the litigant's race from the venire. The peremptory-challenge opponent is entitled to rely on the fact that the strike is an inherently 'discriminating' device, permitting 'those to discriminate who are of a mind to discriminate' .[ ]. The litigant must then show an inference of racial discrimination by the striking party. The trial court should consider all relevant circumstances in determining whether a prima-facie case exists, including all statements by counsel exercising the peremptory challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority venire members is present. [ ]. Assuming a prima-facie case exists, the striking party must then articulate a race-neutral explanation 'related to the particular case to be tried.' [ ]. A simple affirmation of general good faith will not suffice.

However, the explanation 'need not rise to the level justifying exercise of a challenge for cause.' [ ]. The critical issue is whether a discriminatory intent is inherent in counsel's explanation for use of the strike; intent is present if the explanation is merely pretext for exclusion based on race. [ ]. (Internal citations omitted.) *Hicks v. Westinghouse Materials Co.*, 78 Ohio St.3d 95, 98–99, 1997–Ohio–227, 676 N.E.2d 872.

{¶38} Although the striking party must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive or even plausible;" so long as the reason is not inherently discriminatory, it suffices. *Purkett v. Elem*, 514 U.S. 765, 767–768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam); *Rice v. Collins*, 546 U.S. 333, 126 S.Ct. 969, 973–74, 163 L.Ed.2d 824 (2006).

{¶39} Finally, the trial court must determine whether the party opposing the peremptory strike has proved purposeful discrimination. *Purkett, supra*, 514 U.S. at 766–768. It is at this stage that the persuasiveness, and credibility, of the justification offered by the striking party becomes relevant. *Id.* at 768. The critical question, which the trial judge must resolve, is whether counsel's race-neutral explanation should be believed. *Hernandez v. New York*, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *State v. Nash*, 5th Dist. Stark No. 1995CA00024, 1995 WL 498950, 2 (August 14, 1995). This final step involves considering "the persuasiveness of the justification" proffered by the striking party, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett, supra*, at 768.

{¶40} Counsel and the trial court had the following discussion regarding the State's peremptory challenge to Juror No. 4:

THE COURT: I'm not even positive. I believe she was the only – I think she's a minority, and I believe she was the only person on the original panel of twelve. So there's – you asked for *Batson*. Basis.

* * *

MS. TAMILARASAN: I think – well, we would challenge the peremptory based on *Batson*. This is the only minority on the initial panel and to strike her would –

* * *

MR. WELCH: First, Your Honor, I was not certain she was a minority. I do not know that. But the reason that she was excused is she hesitated a little bit, had some difficulty with the one witness information, and primarily because she's provided legal advice to individuals. The first juror that was dismissed was dismissed because she is a paralegal for a law firm and provides legal information to individuals.

THE COURT: All right. I'm going to allow the peremptory challenge, but we needed to put on the record your basis.

(T. 159-160).

{¶41} The record in this case supports the State's race-neutral explanation for the peremptory challenge. Bowen was charged with trafficking in marijuana and possession of marijuana. When asked how she felt about the legalization of marijuana, Juror No. 4 stated marijuana was no worse than alcohol. (T. 74-75). Juror No. 4 did state she could find Bowen guilty of trafficking or possession if proven guilty. (T. 75). The State asked the potential panel if the State called just one witness to testify, would the jurors be able to

sign a verdict form of guilty if the jurors believed the witness and the testimony covered everything it was supposed to cover. (T. 95). Juror No. 4 responded she would struggle with one witness and would prefer physical evidence to corroborate the witness's statement. (T. 97-98). Finally, Juror No. 4 testified she was once employed as a governmental civil rights specialist, which required her to instruct individuals how to file a discrimination complaint. (T. 143-144).

{¶42} The State provided the trial court with a clear and specific explanation of its legitimate reasons for exercising the challenge. The record in this case supports the State's race-neutral explanation and the trial court did not err in finding the State met its burden.

{¶43} Bowen's third Assignment of Error is overruled.

### IV. and V. Sufficiency and Weight of the Evidence

{¶44} Bowen argues in his fourth and fifth Assignments of Error that his convictions are against the sufficiency and manifest weight of the evidence. We disagree.

{¶45} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the

evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶46} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶47} Bowen contends the evidence in this case did not support his convictions for drug possession and drug trafficking. Of the contents found in the Chevy Avalanche, he states BCI could only determine Bowen's fingerprint was on one small bag of methamphetamine. While marijuana was found within the truck, it was contained in a shoe box for shoes sized 8.5. Evidence was presented that Bowen wore a size 10 shoe.

{¶48} The evidence in this case showed that during his investigation, Det. Wilhite observed Bowen driving the Chevy Avalanche truck. Det. Wilhite testified Bowen was a known associate of Ronald Brandon, the subject of Det. Wilhite's drug activity investigation. On the day the search warrants were executed as part of the drug investigation, the Chevy Avalanche was parked in front of Ronald Brandon's residence. A free air sniff by a trained narcotics dog alerted to the odor of drugs coming from the truck. A search of the truck based on a warrant revealed methamphetamine and

marijuana contained in bags and mason jars. Accoutrements were also found, such as a digital scale, rubber bands, and jeweler bags, that Det. Wilhite testified are used in drug trafficking. Some of the drugs were contained in a Jimmy Jazz clothing bag, which contained a receipt dated May 14, 2016. Security video from the Jimmy Jazz clothing store showed Bowen making a purchase on that date. Documents and equipment with Bowen's name were found in the truck.

{¶49} Based on this evidence, viewed in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Bowen was guilty of drug possession and drug trafficking. The record contains sufficient evidence to support Bowen's conviction. We further cannot conclude the jury lost its way and created a manifest miscarriage of justice when it found Bowen guilty of all the charges. We cannot find that Bowen's convictions are against the manifest weight of the evidence.

{¶50} Bowen's fourth and fifth Assignments of Error are overruled.

### VI. Ineffective Assistance of Counsel

{¶51} In his final Assignment of Error, Bowen contends he received ineffective assistance of defense trial counsel because his counsel failed to move for the merger of the offenses of trafficking in marijuana and possession of marijuana as allied offenses. He also argues defense trial counsel was ineffective because she failed to request the trial court waive court costs and fines because Bowen was indigent.

{¶52} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide

range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶53} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶54} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

**A. Allied Offenses**

{¶55} We first address Bowen's argument that trial counsel was ineffective for failing to move for the merger of the offenses of trafficking in marijuana and possession of marijuana. A defendant may be indicted and tried for allied offenses of similar import, but may be sentenced on only one of the allied offenses. *State v. Carr,* 5th Dist., 2016-Ohio-9, 57 N.E.3d 262, ¶ 42, citing *State v. Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 42. R.C. 2941.25 states as follows:

(A) Where the same conduct by defendant can be construed to constitute

two or more allied offenses of similar import, the indictment or information

may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶56} The question of whether offenses merge for sentencing depends upon the subjective facts of the case in addition to the elements of the offenses charged. *State v. Hughes*, 5th Dist. Coshocton No. 15CA0008, 2016-Ohio-880, 60 N.E.3d 765, ¶ 21. In a plurality opinion, the Ohio Supreme Court modified the test for determining whether offenses are allied offenses of similar import. *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. The Court directed us to look at the elements of the offenses in question and determine whether or not it is possible to commit one offense and commit the other with the same conduct. *Id.* at ¶ 48. If the answer to such question is in the affirmative, the court must then determine whether or not the offenses were committed by the same conduct. *Id.* at ¶ 49. If the answer to the above two questions is yes, then the offenses are allied offenses of similar import and will be merged. *Id.* at ¶ 50. If, however, the court determines that commission of one offense will never result in the commission of the other, or if there is a separate animus for each offense, then the offenses will not merge. *Id.* at ¶ 51.

{¶57} *Johnson's* rationale has been described by the Court as "incomplete." *State v. Earley,* 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 11. The Court has

further instructed us to ask three questions when a defendant's conduct supports multiple offenses: (1) were the offenses dissimilar in import or significance? (2) were they committed separately? and (3) were they committed with separate animus or motivation? *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31. An affirmative answer to any of the above will permit separate convictions. *Id.* The conduct, the animus, and the import must all be considered. *Id.*

{¶58} Bowen was convicted of trafficking marijuana in violation of R.C. 2925.03(A)(2), which forbids a person to, "Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows * * * that the controlled substance * * * is intended for sale or resale by the offender or another person." Bowen was also convicted of possessing marijuana in violation of R.C. 2925.11(A), which provides, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

{¶59} Bowen's convictions for trafficking and possession were based on the same marijuana found in the Chevy Avalanche. Focusing on Bowen's conduct pursuant to *Ruff, supra*, the offenses of trafficking and possession have similar import, committed with the same animus, and were not committed separately. *See State v. Bradley*, 2015-Ohio-5421, 55 N.E.3d 580, ¶ 42 (8th Dist.). In this case, we find Bowen's defense trial counsel was ineffective for her failure to move for the merger of the offenses of trafficking in marijuana and possession of marijuana. Bowen was prejudiced by counsel's failure to raise the issue of merger before the trial court.

{¶60} The case is remanded to the trial court for appropriate merger and resentencing after the State elects under which count it wishes to proceed to sentencing under.

### B. Indigency

{¶61} Bowen maintains that he filed an affidavit of indigency with the trial court and was thereafter appointed defense counsel. He contends that said counsel was subsequently ineffective for failing to request a waiver of fines and court costs on his behalf, based on his indigent status. *See* R.C. 2947.23(C).

{¶62} In support of the waiver of court costs, he cites *State v. Springer,* 8th Dist. Cuyahoga No. 104649, 2017-Ohio-8861. *Springer* is in conflict with our decision in *State v. Davis,* 5th Dist. Licking No. 17-CA-55, 2017-Ohio-9445, and that the present issue has been accepted for review by the Supreme Court of Ohio upon our certification of a conflict. *See State v. Ramsey*, 5th Dist. Licking No. 17-CA-76, 2018-Ohio-2365, ¶ 46. We held in *Ramsey* that "[u]nless a decision is rendered on the issue to the contrary in the future, this Court will continue to abide by its decision in *Davis.*" *Id.*

{¶63} Accordingly, in conformity with *Ramsey*, we hold Bowen was not deprived of the effective assistance of trial counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 10 of the Ohio Constitution.

{¶64} As to the imposition of mandatory fines, we do not find Bowen's counsel was ineffective for failing to raise the issue of indigency. R.C. § 2929.18(B)(1) provides:

> (B)(1) For a first, second, or third degree felony violation of any provision of
>
> Chapter 2925., 3719., or 4729. of the Revised Code, the sentencing court

shall impose upon the offender a mandatory fine of at least one-half of, but not more than, the maximum statutory fine amount authorized for the level of the offense pursuant to division (A)(3) of this section. If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender.

{¶65} In *State v. Webb*, Richland No. 14–CA–85, 2015–Ohio–3318, 2015 WL 4899511, this Court held:

Further, Ohio law does not prohibit a court from imposing a fine on an "indigent" defendant. That is, the filing of an affidavit of indigency does not automatically entitle a defendant to a waiver of a mandatory fine. *State v. Knox*, 8th Dist. Cuyahoga Nos. 98713 and 98805, 2013–Ohio–1662 [2013 WL 1791391], ¶ 36. *509 Under Ohio law, a trial court must impose a mandatory fine unless (1) the offender files an affidavit of indigency prior to sentencing, and (2) "the trial court finds that the offender is an indigent person and is unable to pay the mandatory fines." *State v. Gipson*, 80 Ohio St.3d 626, 634, 687 N.E.2d 750 (1998). In making its indigency determination, the court must consider both the offender's present and future ability to pay the fine. R.C. § 2929.19(B)(5).

Additionally, the trial court need not make an "affirmative finding that an offender is able to pay a mandatory fine." Id. at 635 [687 N.E.2d 750]. Instead, "the burden is upon the offender to affirmatively demonstrate that he or she is indigent and is unable to pay the mandatory fine." Id. We review the trial court's decision to impose a fine on an indigent defendant for an abuse of discretion. *State v. Ficklin*, 8th Dist. Cuyahoga No. 99191, 2013–Ohio–3002 [2013 WL 3583030], ¶ 5. An abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶66} R.C. § 2929.19(B)(5) reads,

(B)(5) Before imposing a financial sanction under section 2929.18 of the Revised Code or a fine under section 2929.32 of the Revised Code, the court shall consider the offender's present and future ability to pay the amount of the sanction or fine.

{¶67} Upon review of Bowen's affidavit of indigency, the same does not provide sufficient information to support a finding of indigency with respect to the mandatory fine or court costs. Rather, the affidavit refers to indigency with respect to the appointment of counsel. Under these circumstances, we find the trial court did not abuse its discretion in imposing the mandatory fine and/or court costs in this matter. *See State v. Harris*, 5th Dist. Muskingum No. CT2018-0005, 2018-Ohio-2257, 2018 WL 2947948, ¶¶ 37-42.

{¶68} Accordingly, we sustain Bowen's sixth Assignment of Error in part and overrule it in part. The case is remanded to the trial court for appropriate merger and

resentencing after the State elects under which count it wishes to proceed to sentencing under.

## CONCLUSION

{¶69} The judgment of the Muskingum County Court of Common Pleas is affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion and law.

By: Delaney, J.,

Wise, John, P.J. and

Baldwin, J., concur.