[Cite as *State v. Perkins*, 2019-Ohio-4328.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| KAYLA PERKINS | : | Case No. 19CA38 |
| Defendant-Appellant | : | |
| | : | |
| | : | OPINION |


CHARACTER OF PROCEEDING:     Criminal appeal from the Mansfield
Municipal Court, Case No. 2018-TRC-
10145


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     October 21, 2019


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOHN SPON                              DARIN AVERY
Mansfield Law Director                  105 Sturges Avenue
30 North Diamond St.                    Mansfield, OH 44903
Mansfield, OH 44902

*Gwin, P.J.*

{¶1} Appellant Kayla Perkins appeals the April 10, 2019 judgment entry of the Mansfield Municipal Court denying her motion to suppress. Appellee is the State of Ohio.

*Facts & Procedural History*

{¶2} Appellant was charged with OVI pursuant to R.C. 4511.19(A)(1)(a), OVI pursuant to R.C. 4511.19(A)(1)(d), and a marked lanes violation pursuant to R.C. 4511.33.

{¶3} On January 22, 2019, appellant filed a motion to suppress, arguing the trooper had no reason to stop her and that her prolonged detention violated her right to be free from unreasonable searches and seizures.

{¶4} Trooper Warner ("Warner"), with the Ohio State Highway Patrol, testified he stopped appellant on October 10, 2018 at 11:36 p.m. Warner testified he was traveling westbound on Park Avenue and he noticed appellant commit a marked lanes violation because she crossed over the marked lanes on the roadway. Warner stated the area of Park Avenue where he saw appellant cross the line is hilly, but confirmed he saw appellant commit a marked lanes violation. On cross-examination, Warner testified the marked lines violation occurred when the vehicle crossed the white line, and he believes it was the fault line. Upon viewing the dash cam video, Warner stated the vehicle crossed the white line when it was going up the hill while it was in the right lane, approximately one-fourth of a mile ahead of him. Warner identified the portion of the dash cam video where the vehicle crossed the line.

{¶5} Upon seeing the marked lanes violation, Warner conducted a traffic stop. As soon as Warner approached the driver's side of the vehicle, he noticed there was a

smell of alcohol coming from the vehicle.  Warner testified that once he noticed the odor, he asked appellant, the driver of the vehicle, to step out and walk to the rear of his patrol car.  Based on the marked lanes violation and the smell of alcohol, Warner was suspicious that appellant was under the influence of alcohol.  Warner placed appellant in his patrol car while he conducted the rest of the traffic stop because her story did not add up and because there were three passengers in the vehicle and none of their stories matched up.  Warner had appellant sit in the back of the patrol car while he finished with the rest of the passengers.

{¶6}    When Warner approached appellant again in the patrol car, the odor of alcohol was much stronger.  Warner put appellant through standard field sobriety tests and, based upon the totality of the circumstances, concluded appellant was impaired. Warner thus placed appellant under arrest and offered her a breath test at the Ohio State Patrol post, on which she blew a .158.

{¶7}    Warner testified that while he was investigating the OVI, he requested a K-9 unit from the Mansfield Police Department because the driver and passengers seemed nervous and none of their stories matched up.  The K-9 arrived and sniffed the car while Warner was handling his OVI stop.  Warner did a search of the car because the K-9 positively indicated.

{¶8}    Warner testified on cross-examination that he did not initiate the field sobriety tests until approximately twenty-eight minutes into the stop.  Warner stated on re-direct that he was investigating and inquiring as to the OVI during the entirety of the video from the dash cam.

{¶9} The trial court issued a judgment entry on April 10, 2019 denying appellant's motion to suppress. The trial court found as follows: on October 10, 2018 at 11:36 p.m., Trooper Warner stopped appellant's vehicle for a marked lanes violation; Warner testified that as soon as he approached the driver side window of the vehicle, he could smell the odor of alcohol and he then requested the driver/appellant exit the vehicle; appellant exited the vehicle and Warner placed her in the back of his cruiser; Warner testified that, after placing appellant in his vehicle, the odor of alcohol grew stronger; as the officer continued his investigation, he directed an auxiliary officer to conduct a K-9 open air sniff of appellant's vehicle; during the search, no contraband was located; Warner testified the open air sniff was performed because appellant and her three passengers appeared nervous and told him conflicting stories about what they were doing that night; Warner proceeded with his OVI investigation of appellant; after appellant performed the gaze nystagmus, the walk and turn, and one leg stand tests, Warner arrested her for OVI; and the investigation lasted for approximately twenty-eight minutes.

{¶10} The trial court concluded that, unlike the facts in *Rodriguez v. United States*, 575 U.S. ---, 135 S.Ct. 1609, 191 L.Ed.2d 942 (2015), in the case at bar, the officer had reasonable suspicion to detain appellant when he smelled alcohol on her breath because appellant was arrested for impaired driving. The trial court found appellant and her companions' behavior extended the stop, not the officer's delay and the fact that they were nervous, the conflicting accounts of their stories, and appellant's possible impairment led the trooper to conduct an open air sniff. The trial court determined the trooper took a reasonable amount of time to complete his mission.

{¶11} The trial court held a plea hearing on April 16, 2019. As part of appellant's plea, appellee dismissed the marked lanes violation and the OVI count pursuant to R.C. 4511.19(A)(1)(d). Additionally, appellee amended the remaining OVI charge and appellant pled guilty to a violation of R.C. 4511.194, having physical control of a vehicle while under the influence. The trial court sentenced appellant to thirty days in jail, with all thirty days suspended, and vacated the previously-imposed administrative license suspension.

{¶12} Appellant appeals the April 10, 2019 judgment entry of the Mansfield Municipal Court and assigns the following as error:

{¶13} "I. THE TRIAL COURT ERRED IN FINDING THAT THE TROOPER HAD OBSERVED A MARKED LANES VIOLATION, AS THE VIDEO OF THE CAR SHOWS NO MARKED LANES VIOLATION.

{¶14} "II. THE TRIAL COURT ERRED IN FINDING THAT THE OFFICER SMELLED ALCOHOL AT HIS FIRST CONTACT WITH MS. PERKINS, AS HE ONLY ASKED ABOUT ALCOHOL 3 ½ MINUTES AFTER HE STOPPED HER, AND HE DID NOT ASK ANY FURTHER QUESTIONS ABOUT ALCOHOL UNTIL 23 MINUTES LATER.

{¶15} "III. THE TRIAL COURT ERRED BY FAILING TO SUPPRESS EVIDENCE OBTAINED DURING THE STOP BECAUSE THE TROOPER UNLAWFULLY SEIZED THE DEFENDANT LONGER THAN THE TIME "NECESSARY" TO COMPLETE HIS TRAFFIC-BASED INQUIRIES."

{¶16} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 713

N.E.2d 1 (4th Dist. 1998). During a suppression hearing, the trial court assumes the role of the trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (4th Dist. 1993), overruled on other grounds.

{¶17} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist. 1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *Id.* Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 620 N.E.2d 906 (8th Dist. 1994).

{¶18} Finally, as the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), " * * * as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.*

I.

{¶19} In her first assignment of error, appellant argues the trial court erred in finding Warner observed a marked lanes violation, as the dash cam video shows no marked lanes violation, and thus contradicts the testimony of the trooper. Appellant states the trial court should have determined the trooper's testimony that he witnessed appellant commit a traffic violation was not credible based upon the lack of supporting evidence in the dash cam video.

{¶20} The trooper was required to have a reasonable, articulable suspicion of a traffic violation to support his decision to stop appellant. Reasonable suspicion constitutes something less than probable cause. *State v. Logan*, 5th Dist. Richland No. 07-CA-56, 2008-Ohio-2969. A single suspected traffic violation provides reasonable suspicion for an officer to stop a vehicle. *State v. Lewis*, 5th Dist. Knox No. 19 CA 000001, 2019-Ohio-3630.

{¶21} In *State v. Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972 (1992), the Ohio Supreme Court noted that the evaluation of evidence and the credibility of the witnesses are issues for the trier of fact in the hearing on a motion to suppress. *Id.* The court of appeals is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence.

An appellate court's role in reviewing a trial court's ruling on a motion to suppress is not to re-evaluate the evidence or the credibility of the witnesses, but to determine whether the trial court's application of the law to the facts, as the trial court found them to be, is appropriate. *Id*; *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (4th Dist. 1993).

{¶22} After review of the record, including the dash cam video of appellant's vehicle, we find the trial court's determination that the trooper observed a marked lanes violation is supported by competent and credible evidence. The trial judge is in the best position to determine the credibility of the witnesses, and his conclusion in this case is supported by competent and credible evidence in the form of the trooper's testimony. Warner testified he saw appellant commit a marked lanes violation because she crossed over the marked lanes on the roadway. On cross-examination, Warner stated he witnessed appellant's vehicle cross the white line. Upon viewing the dash cam video, Warner stated the vehicle crossed the white line when it was going up the hill while it was in the right lane, approximately one-fourth of a mile ahead of him. Warner identified the portion of the dash cam video where the vehicle crossed the line. The trooper, the only witness at the hearing, provided consistent and unrebutted testimony that he observed a marked lanes violation.

{¶23} At the time the violation would appear on the dash cam video, it is difficult to see the white markings in the area where appellant's vehicle was traveling because of the glare of the streetlights on the roadway and due to the fact that appellant's vehicle was cresting a hill. However, it appears from the video that appellant's vehicle crosses the white line when going up the hill. The video does not affirmatively demonstrate that appellant did not cross the marked lane line. We find the trial court did not err in finding

the testimony of the trooper to be credible. See *State v. Gonzalez*, 5th Dist. Stark No. 2013CA00077, 2013-Ohio-5309; *State v. Melsheimer*, 5th Dist. Fairfield No. 16-CA-18, 2016-Ohio-8565.

**{¶24}** We find the trial court did not commit error in finding the trooper had reasonable suspicion to stop appellant's vehicle. Appellant's first assignment of error is overruled.

II.

**{¶25}** In her second assignment of error, appellant contends the trial court erred in its factual finding that the trooper smelled alcohol at his first contact with appellant, as he only asked about alcohol 3 ½ minutes after he stopped her, and did not ask any further questions about alcohol until 23 minutes later.

**{¶26}** The trial judge is in the best position to determine the credibility of the witnesses. *State v. Burnside*, 100 Ohio St.3d 152, 797 N.E.2d 71 (2003). The fundamental rule that the weight of the evidence and credibility of the witnesses are primarily for the trier of fact applies to suppression hearings as well as trials. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982).

**{¶27}** Upon review, we find the trial court's determination is supported by competent and credible evidence. Warner, the only witness at the hearing, provided unrebutted testimony that as soon as he approached the driver's side of the vehicle, there was a smell of alcohol coming from the vehicle and that when he approached the patrol car again after appellant was the lone passenger in the back, the odor of alcohol was much stronger. Simply because the trooper did not verbalize on the dash cam video

when he smelled the odor of alcohol does not mean there is not competent and credible evidence to support the trial court's factual finding.

**{¶28}** Appellant's second assignment of error is overruled.

III.

**{¶29}** In her third assignment of error, appellant argues the trial court erred in failing to grant her motion to suppress because the trooper unlawfully seized appellant longer than the time necessary to complete his traffic-based inquiries. Appellant contends the trooper only began the OVI investigation as an afterthought, unnecessarily prolonged the stop by placing appellant in his cruiser and waiting for the dog to arrive nine minutes later, and prolonged the investigation as the trooper searched the car after the dog signaled.

**{¶30}** "When detaining a motorist for a traffic violation, an officer may delay a motorist for a time period sufficient to issue a ticket or warning." *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282. This "includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates." *Id.* Further, "in determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." *Id.*

**{¶31}** An officer "may not expand the investigative scope of the detention beyond that which is reasonably necessary to effectuate the purposes of the initial stop unless any new or expanded investigation is supported by a reasonable, articulable suspicion

that some further criminal activity is afoot." *State v. Woodson*, 5th Dist. Stark No. 2007-CA-00151, 2008-Ohio-670.

**{¶32}** Appellant contends the dog sniff improperly added time to the detention. The use of a drug detection dog does not constitute a "search" and an officer is not required, prior to a dog sniff, to establish either probable cause or a reasonable suspicion that drugs are concealed in a vehicle. See *Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). The officer needs no suspicion or cause to run the dog around the stopped vehicle if he or she does so contemporaneously with the legitimate activities associated with the traffic violation. *Id.* A canine walk-around of a vehicle, which occurs during a lawful stop and does not go beyond the period necessary to effectuate the stop does not violate the individual's constitutional rights. *Id.* However, the trooper may not extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff. *Rodriguez v. U.S.*, 575 U.S. ---, 135 S.Ct. 1609, 191 L.Ed.2d 942 (2015). The pertinent question is not whether the dog sniff occurs before or after the officer issues or could have issued the initial ticket, but whether the dog sniff adds time to the stop. *Id.*

**{¶33}** Upon review, we find the dog sniff did not add time to the stop and the stop was not otherwise-completed when the dog sniff was conducted. Warner testified he originally stopped appellant for a marked lanes violation, but that as soon as he approached the driver's side window of the vehicle, he could smell the odor of alcohol. On the dash cam video, during the trooper's initial discussion with appellant, she stated she had her license, but the vehicle was not hers, although she had permission to use it. When the trooper returned to his vehicle to run appellant's license, the dash cam video

shows he was immediately concerned that appellant was not giving him straight answers and was also concerned that none of the passengers could provide identification and were not telling him the truth. Approximately three and a half minutes into his investigation, Warner asked appellant how much she had to drink. After initially denying she had anything to drink, appellant stated she had one beer. Warner testified that when he placed appellant in the patrol car, the odor of alcohol was much stronger. After Warner spoke to the passengers, he was concerned about their lack of consistent stories and nervousness.

{¶34} The dog arrived at the scene quickly, approximately eleven minutes into the stop. The dog alerted to drugs on the vehicle; thus, the time the trooper spent searching the car, approximately thirteen minutes, did not subject appellant to prolonged detention because if a trained narcotics dog alerts to the odor of drugs from a lawfully stopped and detained vehicle, an officer has probable cause to search the vehicle for contraband. *State v. Bowen*, 5th Dist. Muskingum No. CT2017-0103, 2018-Ohio-4220. Approximately two minutes after the search of the vehicle based upon the dog alerting was completed, Warner questioned appellant about her alcohol consumption and conducted the gaze nystagmus, walk and turn, and one leg stand tests. During the two-minute interval prior to the field sobriety tests, the officer can be heard on the video asking questions of appellant and the passengers.

{¶35} Warner testified that while he was investigating the OVI, he requested a K-9 unit from the Mansfield Police Department and the K-9 sniffed the car while he was handling the OVI stop. Warner stated that he was investigating and inquiring as to the OVI during the entirety of the stop and the dash cam video.

{¶36} Upon review of the dash cam video and testimony at the suppression hearing, we conclude that, unlike in *Rodriguez*, the stop was not "otherwise-completed" at the time of the dog sniff. Warner did not prolong, or add time to, his stop in order to perform the dog sniff and the duration of the stop did not exceed the time required to complete his inquiries or tasks related to the OVI investigation. Further, we find no competent and credible evidence to support appellant's theory that the OVI investigation was an "afterthought." Upon review of the totality of the circumstances, we find the stop in this case was not unlawfully prolonged. See *State v. Carter*, 5th Dist. Tuscarawas No. 2018 AP 11 0038, 2019-Ohio-2404. Thus, the trial court did not commit error when it overruled appellant's motion to suppress. Appellant's third assignment of error is overruled.

{¶37} Based on the foregoing, appellant's assignments of error are overruled.

{¶38} The April 10, 2019 judgment entry of the Mansfield Municipal Court is affirmed.

By Gwin, P.J.,

Wise, John, and

Wise, Earle, J. concur