[Cite as *State v. Church*, 2024-Ohio-5931.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| WILLIAM D. CHURCH | : | Case No. 2024 CA 00014 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                 Pleas, Case No. 23CR125


JUDGMENT:                        Affirmed


DATE OF JUDGMENT:                December 19, 2024


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JASON R. FARLEY                           CHRIS BRIGDON
627 Wheeling Avenue                       8138 Somerset Road
Cambridge, OH  43725                      Thornville, OH  43076

*King, J.*

{¶ 1}   Defendant-Appellant William D. Church appeals the May 14, 2024 judgment of sentence and conviction of the Guernsey County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On June 5, 2023, Detective Brian Carpenter of the Guernsey County Sheriff's Department was stationary in his cruiser on Interstate 70 watching eastbound traffic. He watched a black and yellow Chevy HHR pass by which he recognized due to its unique paint job and NFL-themed accessories. Carpenter knew Church was known to drive the vehicle and that he was the subject of an ongoing narcotics investigation. Carpenter decided to follow the Chevy on Interstate 70 and as it exited at milepost 178 towards Southgate Parkway. At the end of the exit ramp a white sedan was stopped at the light ahead of the Chevy waiting to turn left. The Chevy pulled beside the white sedan, crossed the fog line with both right-side tires, and stopped beyond the stop bar in order to turn right. Transcript of suppression hearing (T.) 17-21

{¶ 3}   Noting the traffic violation, Carpenter followed the Chevy as it entered a Pilot gas station and activated his cruiser's overhead lights and dash camera. Before Carpenter could approach the vehicle, Church exited the driver's side and approached Carpenter. Carpenter found this unusual. Church stated he did not see Carpenter or realize there was a traffic stop in progress. Carpenter requested Church's license and registration and Church complied. Carpenter placed Church in his cruiser to continue their conversation. Church indicated he was coming from Upper Sandusky where he had spent

the night with his mother and where the two had attended a wrestling match. T. 29-34, 42.

{¶ 4}   Carpenter discovered Church's license was suspended. Church disputed this discovery and Carpenter therefore spent a good portion of the stop reviewing Church's citation and suspension history with him. Carpenter then began writing a warning citation. Carpenter left his cruiser to verify the VIN number on the Chevy matched the information he was receiving when he ran Church's information as well as Church's registration.  T. 38-41.

{¶ 5}   When Church approached the vehicle, he noted no visible luggage nor any supplies for the dog that was in Church's car that would indicate Church had been traveling. Upon returning to the cruiser, Carpenter noticed Church's pupils were constricted. Per Carpenter's training and experience, constricted pupils can be indicative of opiate use. Carpenter therefore became suspicious of Church's whereabouts prior to the stop. T. 41-46.

{¶ 6}   When asked, Church denied ingesting opiates but stated he had a heart condition and was on medication for that. When asked if there was anything illegal in the Chevy Church replied: "I don't think so" and "there shouldn't be." Carpenter found the response suspicious. Carpenter requested permission to search the Chevy and Church denied the same. Carpenter then requested a K9 Unit dispatched to his location for a free-air sniff. T. 46-50, 86.

{¶ 7}   Five minutes after Carpenter made the request, K9 handler Deputy Castor arrived on the scene and deployed his dog. While that was happening, Detective Carpenter was explaining the warning citation to Church and finishing writing the citation.

During that time, the dog alerted on the Chevy indicating the presence of narcotics. Large quantities of methamphetamine and fentanyl were then discovered in the vehicle. From the beginning of the stop until the dog alerted on Church's Chevy, a total of 22 minutes elapsed. T. 51-54, State's exhibit A.

{¶ 8} On July 11, 2023, the Guernsey County Grand Jury returned an indictment charging Church with one count of trafficking in a fentanyl-related compound, a felony of the first degree, possession of a fentanyl-related compound, a felony of the first degree, aggravated trafficking in drugs, a felony of the second degree, and aggravated possession drugs, a felony of the second degree.

{¶ 9} Church entered pleas of not guilty to the charges and filed a motion to suppress the evidence obtained during the traffic stop. Church challenged probable cause and reasonable suspicion for the stop and alleged his detention was unlawfully extended in order to bring a K9 officer to the scene.

{¶ 10} A hearing was held on the motion on November 27, 2023. The state presented testimony from Detective Carpenter and K9 Officer Castor and elicited the above outlined testimony. On December 13, 2023, the trial court denied Church's motion.

{¶ 11} On March 15, 2024, following plea negotiations with the state, Church entered pleas of no contest to one count of possession of a fentanyl-related compound, a felony of the first degree, and aggravated possession of drugs, a felony of the second degree. In exchange for Church's pleas the state agreed to dismiss the remaining counts of the indictment and agreed to cap their argument for prison time at 12 years. Church's bond was the continued pending completion of a presentence investigation.

{¶ 12} Church appeared for sentencing on May 13, 2024. The trial court sentenced Church to an aggregate total of 12-16 years incarceration.

{¶ 13} Church filed an appeal and the matter is now before this court for consideration. He raises one assignment of error as follows:

I

{¶ 14} "THE TRIAL COURT ERRED WHEN DENYING THE MOTION TO SUPPRESS EVIDENCE WHERE THE DEFENSE CLEARLY ESTABLISHED THE DURATION OF THE STOP EXCEEDED THE PURPOSE OF THE TRAFFIC STOP TO EXTEND THE STOP UNTIL THE K-9 UNIT ARRIVED."

{¶ 15} In his sole assignment of error, Church argues Detective Carpenter unlawfully extended the duration of the traffic stop in order to bring a K9 handler to the scene, that the stop was pretextual and intended to target Church, and Carpenter's testimony was inconsistent and therefore incredible. We disagree.

### Standard of Review

{¶ 16} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314 (1995); *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside*, supra; *Dunlap*, supra. Once this Court has

accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside*, supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 (4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266 (2002). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review *Ornelas v. United States*, 517 U.S. 690 (1996).

{¶ 17} Three methods exist to challenge a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of facts. *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). "A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence." *State v. Curry*, 95 Ohio App.3d 93, 96 (8th Dist.1994). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, the appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 41 (4th Dist.1993), overruled on other grounds. Third, an appellant may argue the trial court incorrectly decided the ultimate issue raised in the motion to suppress. When addressing the third type of challenge, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. *Curry* at 96.

{¶ 18} Church's challenge to the trial court's decision rests on mixed claims of law and fact.

## Traffic Stops

{¶ 19} " '[W]hen detaining a motorist for a traffic violation, an officer may delay a motorist for a time period sufficient to issue a ticket or warning.' " *State v. Elliot*, 2019-

Ohio-4411, ¶ 21 (5th Dist.) quoting *State v. Batchili*, 2007-Ohio-2204, ¶ 12 quoting *State v. Keathley*, 55 Ohio App.3d 130, 131 (2nd Dist.1988). The scope and duration of a routine traffic stop "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop." *State v. Latona*, 2011-Ohio-1253, ¶¶ 20-21 (5th Dist.) quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983); see also, *State v. Gonyou*, 108 Ohio App.3d 369, 372 (6th Dist.1995). The measure of the time period includes the time sufficient to run a computer check of the driver's license, registration, and vehicle plates. *State v. Elliot*, 2019-Ohio-4411, ¶ 21 citing *State v. Bolden*, 2004-Ohio-184 ¶ 17 (12th Dist.) citing *Delaware v. Prouse*, 440 U.S. 648, 659 (1979). Additionally, " '[i]n determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.' " *Id.*, quoting *State v. Carlson*, 102 Ohio App.3d 585, 598-599 (9th Dist.1995), citing *State v. Cook*, 65 Ohio St.3d 516, 521-522 (1992), and *United States v. Sharpe*, 470 U.S. 675 (1985). See also *State v. Whitman*, 2009-Ohio-5647 (5th Dist.); *State v. Woodson*, 2008-Ohio-670, ¶ 21 (5th Dist.)

### Length of the Stop

{¶ 20} Church argues Carpenter unnecessarily extended the length of the stop in order to get a K9 unit to the scene. He argues an unnecessary VIN check, excessive entry and exit from the vehicle by Carpenter, interrupted ticket writing, and excessive unrelated questioning were all conducted with the sole purpose of delaying the issuance of a warning citation.

{¶ 21} This court has recently found "the pertinent question is not whether the dog sniff occurs before or after the officer issues or could have issued the initial ticket, but whether the dog sniff adds time to the stop. *State v. Perkins*, 5th Dist. Richland No. 19CA38, 2019-Ohio-4328, appeal not allowed, 158 Ohio St.3d 1410, 2020-Ohio-518, 139 N.E.3d 926." *State v. Lewis*, 2021-Ohio-1360, ¶ 22 (5th Dist.) appeal allowed, 2021-Ohio-2742, ¶ 22 and appeal dismissed as improvidently allowed, 2022-Ohio-1570.

{¶ 22} Here no time was added to the stop in order to bring a dog to the scene. While Church argues Carpenter unnecessarily extended the stop in various ways, we note that Church initiated the conversation regarding whether or not his operator's license was suspended as well as on other topics including wrestling and his heart condition. T. 38-39, 55-56, 85, 109-110, State's exhibit A. Carpenter also testified he routinely checks the physical VIN on a vehicle during a traffic stop and needed to exit his cruiser a second time to remove Church's dog from his vehicle before the canine sniff was performed. T. 40-41, 51-52. It took 22 minutes for Church to issue the citation which he testified was not unusual. T. 78, 96

{¶ 23} To support his argument that the traffic stop here was illegally extended Church relies upon *Rodriguez v. U.S.*, 135 S.Ct. 1609 (2015). *Rodriguez*, however, is factually distinguishable. In that matter, the officer had completed the purpose for the traffic stop, and had issued Rodriguez a citation. Only then did the officer request permission from Rodriguez to walk his dog around Rodriguez's vehicle. When Rodriguez declined, the officer further detained Rodriguez, directed him to exit the vehicle and stand in front of it until a second officer arrived on the scene. The dog sniff in *Rodriguez* was not conducted contemporaneously with the legitimate activities of the traffic stop.

{¶ 24} The facts here differ. Church was lawfully detained and the purpose of the traffic stop had not yet been fulfilled when Officer Castor arrived and walked his dog around Church's car. We therefore find no Fourth Amendment violation in Carpenter's decision to summon Castor to walk his dog around Church's car. *State v. Latona*, 2011-Ohio-1253, ¶ 25 (5th Dist.), citing *State v. Guckert*, 2000-Ohio-1958 (4th Dist.).

## Church's Remaining Arguments

{¶ 25} Church also argues the stop was pretextual. In *State v. Ackerson*, 2013-Ohio-4020 (5th Dist.) we noted "[a] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has a reasonable, articulable suspicion a traffic or equipment violation has occurred or is occurring. *City of Dayton v. Erickson*, (1996), 76 Ohio St.3d 3. It is irrelevant the officer may have had other subjective motives for stopping the vehicle. *Id.*" *Ackerson*, ¶ 21. Because Church does not argue that he did not commit the traffic offense upon which the traffic stop was made, his pretextual stop argument is without merit.

{¶ 26} Church also argues Detective Carpenter's testimony lacked credibility and was inconsistent. Church specifically points to Carpenter's testimony regarding whether or not he knew Church was driving the suspect vehicle and therefore alleges Carpenter was untruthful and inconsistent about his true motivation for the traffic stop.

{¶ 27} During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154 (1996). A reviewing court is bound to

accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145 (4th Dist.1996).

{¶ 28} Detective Carpenter testified he recognized Church's vehicle due to its unique appearance and the fact that Church had been the subject of an ongoing drug investigation for one to two years. T. 17-18. He stated he was unable to see who was driving until Church exited the Chevy. T. 106. Church appears to argue that this testimony was untruthful because in his opinion, Carpenter actually sought to stop Church to conduct a drug investigation. But as noted above, as long as a traffic violation occurred, Carpenter's subjective motive for making the traffic stop is irrelevant. So too, simply because Carpenter was uncertain who was behind the wheel until he actually saw who was behind the wheel is in no way inconsistent or incredible, particularly since this stop took place at night.

{¶ 29} For the forgoing reasons, Church's sole assignment of error is overruled.

{¶ 30} The judgment of the Guernsey County Court of Common Pleas is affirmed.


By King, J.,

Hoffman, P.J. and

Baldwin, J. concur.