[Cite as *State v. Thompson*, 2025-Ohio-2427.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | Hon. Kevin W. Popham, J. |
| | Hon. David M. Gormley, J. |
| -vs- | |
| WYATT H. THOMPSON | Case No. 2025 CA 00002 |
| Defendant-Appellee | O P I N I O N |


CHARACTER OF PROCEEDINGS:     Appeal from the Licking County Municipal
Court, Case No. 24-TRC-06355

JUDGMENT:     Reversed and Remanded


DATE OF JUDGMENT ENTRY:     July 8, 2025

APPEARANCES:

For Plaintiff-Appellant     For Defendant-Appellee

J. MICHAEL KING     ROBERT E. CALESARIC
Assistant Law Director, City of Newark     35 South Park Place, Suite 150
40 West Main Street     Newark, Ohio 43055
Newark, Ohio 43055

*Hoffman, P.J.*

{¶1} Plaintiff-appellant the State of Ohio appeals the judgment entered by the Licking County Municipal Court sustaining Defendant-appellee Wyatt Thompson's motion to suppress evidence.

STATEMENT OF THE FACTS AND CASE

{¶2} On July 21, 2024, Trooper Anthony Pagan of the Ohio State Highway Patrol was on routine patrol on Granville Road in Newark, Ohio. He stopped a vehicle driven by Appellee for traveling over the marked center line of the roadway. Appellee indicated to the Trooper he had been texting a friend.

{¶3} Upon speaking further with Appellee, the trooper noticed Appellee's eyes were bloodshot and glassy. The trooper noted Appellee's speech was slurred and a strong odor of alcohol was coming from the vehicle. Appellee stated he had two to three drinks, clarifying he had two full drinks, and a part of a third drink. The trooper asked Appellee to exit the vehicle, upon which the trooper noted the odor of alcohol on Appellee's breath. After administering field sobriety tests, Appellee was arrested and taken to the Hebron Police Department, where he supplied a breath sample for chemical testing.

{¶4} Appellee was charged with operating a motor vehicle while intoxicated, operating a motor vehicle with a prohibited breath alcohol content, driving outside marked lanes, and distracted driving. Appellee filed a motion to suppress evidence, arguing in part the Trooper did not have a reasonable suspicion of criminal activity to justify the stop of his vehicle.[1]

---

[1] Appellee also challenged the expansion of the initial stop, the administration of field sobriety tests, and the existence of probable cause to arrest him for OVI. Because the trial court determined the trooper lacked

**{¶5}** The case proceeded to a suppression hearing in the Licking County Municipal Court. Trooper Pagan testified at the hearing he observed Appellee's vehicle cross the center line. A video taken from the Trooper's dashboard camera was also admitted into evidence. Trooper Pagan admitted the marked lanes violation was not clear on the video. When asked why the violation was difficult to see on the video, Trooper Pagan testified:

> Just purely just because I was far back. My cruiser was far back and so it was kind of hard to see but you can see on the video in respect to the width of his vehicle, the width of roadway and where that right tail light is to go with that roadway you can observe, I guess, see where he would be over.

**{¶6}** Tr. 9.

**{¶7}** The trial court granted the motion to suppress, finding the officer lacked a reasonable, articulable suspicion of a marked lanes violation to justify the stop of Appellee's vehicle. The trial court made its decision based on the court's general policy in reviewing suppression motions: if the violation does not appear on the dashcam video, the court will find the violation did not occur. It is from the January 15, 2025 judgment of the trial court the State prosecutes its appeal, assigning as error:

---

a reasonable suspicion of criminal activity to justify the stop, the trial court did not reach the remaining issues raised in Appellee's motion to suppress.

THE TRIAL COURT ERRED WHEN IT GRANTED THE APPELLEE'S MOTION TO SUPPRESS.

**{¶8}** The State argues the trial court erred in basing its decision on its policy to consider only its review of the dashcam video, without considering the credibility of the officer's testimony. We agree.

**{¶9}** Pursuant to the Fourth Amendment to the United States Constitution, the trooper was required to have a reasonable, articulable suspicion of criminal activity to stop Appellee's vehicle. *See State v. Mays*, 2008-Ohio-4358, ¶ 23. Reasonable suspicion constitutes something less than probable cause. *State v. Perkins,* 2019-Ohio-4328, ¶ 20 (5th Dist.). A single suspected traffic violation provides reasonable suspicion for an officer to stop a vehicle. *Id.*

**{¶10}** In its judgment entry, the trial court made the following conclusion of law in determining Trooper Pagan lacked a reasonable, articulable suspicion of a traffic violation to justify stopping Appellee's vehicle:

Here, the state argues that Pagan was justified in stopping the defendant after personally seeing a traffic infraction. The trooper admitted in his direct testimony that the violation was not visible in the video recording from the camera in his cruiser. This Court has consistently found that an allegation of a traffic violation without visible corroboration when a video has been make [sic] is insufficient to establish that an offense has been committed.

Indeed, the Court questions the usefulness of dashcam recordings to establish probable cause to stop a motorist if they do not clearly show the violation. To rule otherwise would leave the Court susceptible to arbitrary decisions about finding certain law enforcement officers' testimony sufficiently credible to justify a stop over others' without any guidance beyond a gut feeling. The law does not operate on gut feelings and the Court declines to do so in this case.

In the absence of corroborating video evidence of a traffic infraction, the Court finds that the trooper lacked probable cause or even a reasonable, articulable suspicion the defendant violated the law, rendering the initial traffic stop unconstitutional.

**{¶11}** Judgment Entry, January 15, 2025, pages 3-4.

**{¶12}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *Id., citing State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id., citing State v. Fanning*, 1 Ohio St.3d 19 (1982). Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *Id., citing State v. McNamara*, 124 Ohio App.3d 706 (1997).

**{¶13}** In the instant case, the trial court did not fulfill its role as the trier of fact by evaluating the credibility of witnesses and resolving factual questions. Instead, the trial court expressly declined to put itself in the position of judging the credibility of police officers on a case-by-case basis, and therefore adopted a policy of always relying solely on the video, apparently without regard to the quality of the video. In so doing, the trial court has failed to fulfill its duty as trier of fact to evaluate the credibility of witnesses and to weigh the evidence on a case-by-case basis.

**{¶14}** Although the trial court stated its policy in declining to consider the credibility of police officers was adopted to avoid arbitrary results, the trial court's sole reliance on dashcam video evidence also potentially produces arbitrary results, because the court fails to consider variations in the quality of dashcam video evidence in each individual case. This Court has recognized the trial court may consider the potential problems with the video in cases where the alleged traffic violation does not appear on the video. *See, e.g., State v. Gonzaliz,* 2013-Ohio-5309, ¶ 16 (5th Dist.) (at the time in which the violation occurred, defendant's vehicle was well in front of the cruiser and streetlight glare made it difficult to see lane markings); *State v. Melsheimer,* 2016-Ohio-8565, ¶ 19 (5th Dist.) (although video didn't show defendant's tires crossed the marked lane line, video also did not affirmatively demonstrate tires did not cross the marked lane line); *State v. Perkins,* 2019-Ohio-4328, at ¶ 23, (5th Dist.) (at time violation would appear on the video, defendant was cresting a hill and streetlight glare made lines difficult to see).

**{¶15}** We understand the difficulty presented in cases in which the officer's testimony is not corroborated by the video. However, resolving conflicts in the evidence and evaluating the credibility of witnesses is the duty of the trial court as the fact finder in

a suppression hearing. We find the trial court erred by expressly declining to evaluate the evidence in the instant case, instead relying solely on a bright-line rule it has adopted for all cases. Because the trial court stated it did not evaluate the credibility of the trooper's testimony in comparison to the video, we cannot give deference to the findings of fact of the trial court, and cannot conduct an appropriate appellate review of whether the trial court's findings are supported by competent, credible evidence.[2]

{¶16} Our holding is limited to the failure of the trial court to conduct a proper review of the evidence as it is required to do in its role as the trier of fact. On remand, the trial court may accept or reject the trooper's testimony he observed the violation, and may accept or reject the trooper's explanation of why the offense is not clear on the video. The trial court may find the violation did not occur based on the dashcam video, or may find the trooper had a reasonable, articulable suspicion Appellee committed a marked lanes violation despite the fact the violation is not clear on the video. We only hold the trial court is required to fulfill its duties as trier of fact, evaluating the credibility of the witnesses and weighing the evidence on a case-by-case basis.

---

[2] We note the trial court's Findings of Fact do not detail the facts as found by the court, but rather recount the testimony.

**{¶17}** The assignment of error is sustained.  The judgment of the Licking County Municipal Court is reversed.  This case is remanded to that court for further proceedings according to law, consistent with this opinion.



By: Hoffman, P.J.

Popham, J. and

Gormley, J.  concur